IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIGMA CONSTRUCTORES, S.A.,<br><br>7 Avenida 5-62 Sector A-3<br>San Cristóbal, Zona 8, Mixco<br>Guatemala.<br><br>*Petitioner*<br><br>v.<br><br>REPUBLIC OF GUATEMALA<br><br>15 Avenida 9-69, Zona 13<br>Guatemala City 01013<br>Guatemala<br><br>*Respondent.* | **CIVIL ACTION NO. 1:24-cv-3055** |

**PETITION TO CONFIRM ARBITRAL AWARD**

Petitioner Sigma Constructores, S.A. ("Sigma" or "Petitioner"), a corporation organized under the laws of Guatemala, by and through its undersigned counsel, Holwell Shuster & Goldberg LLP, files this petition ("Petition") pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 207, for an order and judgment confirming an arbitration award rendered under the Conciliation and Arbitration Rules of the Arbitration and Conciliation Center of the Guatemalan Chamber of Commerce and the Cenac Foundation (the "CENAC Rules") against Respondent Republic of Guatemala ("Guatemala," the "State," or "Respondent," and, together with Petitioner, the "Parties"). In support of this Petition, Petitioner states as follows:

## NATURE OF THE PROCEEDING

1.      This is a Petition to confirm a foreign arbitral award unanimously rendered in favor of Sigma and against Guatemala by a three-person tribunal on October 27, 2021, as corrected on November 18, 2021, in the case of *Sigma Constructores, Sociedad Anónima v. Republic of Guatemala*, No. 02-2020 (the "Arbitration").  A true and correct copy of the award is attached as **Exhibit A** to the Declaration of Najman Alexander Aizenstatd in Support of Petition to Confirm Foreign Arbitral Award ("Aizenstatd Decl."), dated October 25, 2024, and a certified translation of the Award into English is attached as **Exhibit B** thereto (the "Award").[1]

2.      The Arbitration arose from a contract between Sigma and Guatemala dated November 7, 2014 related to the design, construction, and upgrade of approximately 100 kilometers (62 miles) of roads in Guatemala (the "Contract").  A true and correct copy of the Contract, and a certified translation of the Contract into English, are attached as **Exhibit E** and **Exhibit F**, respectively, to the Aizenstatd Declaration.[2]  The Director of the General Directorate of Roads, executed the Contract "on behalf of the STATE OF GUATEMALA, by delegation bestowed by the Minister of Communications, Infrastructure, and Housing."  Contract at 2.  Until Guatemala unilaterally suspended and then terminated the Contract on the basis of its own failure to pay for the work, Sigma had timely complied with all its contractual obligations and had tendered its work to the full satisfaction of the State.

3.      The arbitral tribunal unanimously held that Guatemala's failure to pay Sigma for work performed under the Contract after Guatemala's suspension and subsequent unilateral

---

[1] The tribunal issued a correction to the Award on November 18, 2021 to correct a mistranscription of the arbitration clause from the Contract.  A true and correct copy of the Correction of the Award is attached as **Exhibit C** to the Aizenstatd Declaration, and a certified translation into English is attached as **Exhibit D** thereto.
[2] All citations to the "Contract" hereafter refer to **Exhibit F**, the English translation.

2

termination of the Contract, as well as its failure to compensate Sigma for damages and expenses resulting from this conduct, constituted a breach of the Contract. *See* Award ¶¶ 14–17, 81–84, 121. In total, the Award assessed damages, attorney's fees, costs, and expert expenses in favor of Sigma and against Guatemala in the amount of US$ 37,421,119.66 and GTQ 40,000.00, plus interest as set forth in the Award. *Id.* ¶ 115–18, 123, 127–28.

4.   Notwithstanding the provision in the Contract stating that any arbitral award would "not be subject to challenge," Contract at 35, Section Seventeenth, Guatemala filed an action to vacate the Award in Guatemalan court on December 12, 2021. On October 3, 2022, a three-judge panel of the Second Court of Appeals in Civil and Commercial Matters in Guatemala City, Guatemala (the "Appeals Court") dismissed that action and confirmed the Award. *See* Aizenstatd Decl., Ex. H ("Confirmation Judgment") at 25. A true and correct copy of the judgment rendered by the Appeals Court, along with a certified translation of the same into English, are attached as **Exhibit G** and **Exhibit H**, respectively, to the Aizenstatd Declaration.

5.   It has been almost three years since the award was issued and Guatemala has not paid any portion of the Award to date.

## JURISDICTION AND VENUE

6.   This Court has subject-matter jurisdiction over this action under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq.*, which provides that "[t]he district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state." 28 U.S.C. § 1330(a).

7.   Specifically, the Court has subject-matter jurisdiction over this action under the arbitration exception in the FSIA, 28 U.S.C. § 1605(a)(6), because this action is brought to confirm an arbitral award arising from "an agreement made by [a] foreign state with or for the benefit of a

3

private party to submit to arbitration . . . concerning a subject matter capable of settlement by arbitration under the laws of the United States," and the "award is . . . governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards," namely the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958), 21 U.S.T. 2517 (the "<u>New York Convention</u>") and the Inter-American Convention on International Commercial Arbitration, Jan. 30, 1975, O.A.S.T.S. No. 42 (the "<u>Panama Convention</u>").

8.  The Court also has subject-matter jurisdiction under 9 U.S.C. § 203 and § 302, which provide that federal courts possess original jurisdiction over actions "falling under," respectively, the New York Convention and the Panama Convention.

9.  This Court has personal jurisdiction over the Republic of Guatemala pursuant to 28 U.S.C. § 1330(b).

10. Venue is proper pursuant to 28 U.S.C. § 1391(f)(4) because this suit is brought against a foreign state, and Congress intended to make this District a venue for all suits brought against foreign sovereign states not immune from suit.

## FACTUAL BACKGROUND

### The Contract and the Underlying Dispute

11. The Award is the result of Guatemala's refusal to pay Sigma certain sums for work that Guatemala accepted and admitted Sigma had performed under the Contract, as well as for other expenses incurred and damages suffered by Sigma due to Guatemala's suspension and later early unilateral termination of the Contract.

12. Sigma performed the work required under the Contract for almost two years, until Guatemala suspended the Contract on July 16, 2016, as a result of its failure to pay. *See* Award ¶ 14. Up to that point, Guatemala had accepted the work without reservation and paid Sigma in

4

accordance with the Contract. On November 30, 2017, following a sixteen-month suspension, Guatemala unilaterally terminated the Contract and appointed an Acceptance and Liquidation Commission ("Commission"), which would accept the work undertaken to date and approve a value for the "liquidation" of the Contract. *Id.* ¶¶ 17, 20–21. The basis for the State's termination of the Contract was simply its own failure to pay Sigma for the works performed. No objection to the quality or timeliness of Sigma's work on the project has even been raised.

13. On June 6, 2019, the Commission issued a liquidation order establishing that the amount of payment due to Sigma for the works as tendered was US$ 4,602,620.04 (the "Liquidation Order"), despite the real sum owed being far greater. *See* Award ¶¶ 20, 73, 75. The Liquidation Order failed to include, without any explanation, substantive amounts that had been previously reviewed and approved by the corresponding experts at the Ministry. The Liquidation Order was later ratified by the Director of the General Directorate of Roads on June 11, 2019, on behalf of Guatemala. *Id.* ¶¶ 21, 74–75. On June 19, 2019, Sigma requested that the Minister amend the Liquidation Order to account for numerous errors therein, but its request was rejected. *Id*. ¶¶ 19–25.

14. Sigma therefore resorted to the dispute resolution mechanism provided in the Contract, which is "arbitration of law, in accordance with the laws of the Republic of Guatemala," *see* Contract at 35, Section Seventeenth, conducted pursuant to the CENAC Rules. Specifically, Section Seventeenth ("Disputes") of the Contract provides that if the Parties could not reach a mutual resolution of their dispute, either directly or through the applicable conciliation process,

> the dispute will be resolved by arbitration of law, in accordance with the laws of the Republic of Guatemala, by an Arbitration Tribunal that will be appointed in accordance with the Conciliation and Arbitration Regulations of the Center for Arbitration and Conciliation of the Chamber of Commerce of Guatemala (CENAC) valid at the time of the conflict. The arbitration will take place in Guatemala City, it will

be handled by CENAC and the language of the arbitration will be Spanish. The award will not be subject to any challenge and must be complied with in good faith and without delay by the Parties.

### The Arbitration and the Award

15. Sigma initiated the Arbitration on September 29, 2020, seeking damages from Guatemala for its suspension and early termination of the Contract, as well as its failure to pay Sigma for the works performed thereunder. *See* Award ¶ 27. On April 28, 2021, a three-member tribunal was duly constituted in accordance with the parties' arbitration agreement and pursuant to Sections 29 and 30 of the CENAC Rules. The seat of the arbitration was Guatemala City, Guatemala. *Id.* ¶ 7.

16. Sigma filed its complaint on April 28, 2021, requesting that the tribunal issue an award declaring that Guatemala failed to comply with its obligations under the Contract, and ordering Guatemala to pay Sigma a total of at least US$ 32.8 million for work already performed and damages and expenses attributable to Guatemala's premature repudiation of the Contract; Sigma further sought an award of accrued interest on certain invoices, as well as the costs of the arbitration, including attorney's fees and expert work, all in an amount to be determined by the tribunal. *See* Award ¶¶ 27, 116.

17. Guatemala was properly served, appeared and participated in the Arbitration through counsel appointed by the Office of the Attorney General of Guatemala, filing seven motions challenging the tribunal's procedural orders. Award ¶ 56. Guatemala argued and repeated in every one of those motions that the Arbitration should be stayed on the ground that Guatemala was "defenseless" because it was unable to access the original executed copy of the Contract. Guatemala represented that the executed copy was "judicially sealed" due to an ongoing investigation commenced by the Public Prosecutor's Office four years before the arbitration in

6

2017 against Sigma, preventing Guatemala from accessing it until that investigation concluded. Award ¶ 56. As the tribunal later determined, this representation was false. *Id.* ¶ 62–64.

18. Although Guatemala was properly served and participated in the Arbitration, it never submitted an answer to Sigma's complaint, filed a motion against it, or submitted evidence in accordance with the procedural timetable ordered by the tribunal. Award ¶¶ 51, 54–55.

19. Guatemala's participation was specifically addressed by the tribunal in the Award as follows (*see* Award ¶ 67):

> 67. Therefore, this Arbitral Tribunal has achieved a sufficient degree of certainty regarding this matter and concludes that:
> a) The State of Guatemala was duly served with the complaint filed by Sigma Constructores, Sociedad Anónima, and summoned to answer it, so that it could appear in the arbitration and exercise the procedural conduct it deemed appropriate, answer the complaint, file motions, or any other type of defense it considered appropriate.
> b) Lawyer Ilse Noemí Castro Sierra, appeared in the arbitration exercising the representation of the State of Guatemala, by delegation of the Attorney General of Guatemala.
> c) The State of Guatemala, even though properly served, did not answer plaintiff´s complaint, nor did it file any motions.
> d) The State of Guatemala did not offer, propose, or request that any evidence be produced and entered as evidence into the record.
> e) The State of Guatemala did not object or refute the evidence offered, proposed, and produced by the plaintiff.
> f) [T]he State of Guatemala did not appear in any scheduled hearing of the proceedings even though it was duly notified of every stage of the proceedings.
> . . .
> h) That the documents that accompanied the different briefs presented by the State of Guatemala to this Tribunal, because they were not offered or proposed to be entered into evidence at the appropriate time (when answering the complaint) cannot be given any weight, value or consideration in issuing this award.
> . . .
> j) That the Arbitral Tribunal is not able to accept the argument that the State of Guatemala was unable to defend itself, because, before the installation of the Arbitral Tribunal, Lawyer Ilse Noemí Castro Sierra, had already requested and obtained certified copies of the Contract and of the different documents of which

she said she supposedly not had access to and that were necessary to defend the State of Guatemala.

k) That the Arbitral Tribunal, after observing the procedural behavior of the State of Guatemala, by not answering the complaint and not submitting any evidence, decided to send several notices directly to the Attorney General of Guatemala informing him of the conduct of the lawyer to whom he had delegated the representation of the State, but by means of written communication the Attorney General of Guatemala stated that he ratified said actions and positions presented by lawyer Castro.

20.   The arbitral tribunal went so far as to personally inform the Attorney General of Guatemala twice of the arbitral process and the procedural conduct of the State´s legal representative in the arbitration.  In the Award, the tribunal unanimously dismissed Guatemala's motions "concerning the supposed defenselessness," finding that Guatemala—contrary to its allegations—"had, during the whole proceeding, access to the necessary documents in order to defend itself and to take a posture in this arbitration proceeding." *Id.* ¶ 64.  The tribunal also found that a stay of the arbitral proceedings based on alleged pending criminal investigations was unwarranted by the arbitration agreement and Article 103 of the Public Procurement Law.  *Id.* ¶ 66.

21.   Sigma submitted evidence to the tribunal within the procedural deadlines and participated in all hearings held by the tribunal.  Award ¶¶ 34, 37.

22.   To confirm the accuracy of the amounts claimed by Sigma, the tribunal appointed an independent expert to review the damages sought from Guatemala, *see* Award ¶ 80, which included unpaid performed works, unpaid expenses, mistaken deductions, and accrued interest. *Id.* ¶¶ 89–90, 94–95, 99–100, 105–06, 108–10.  The independent expert confirmed the accuracy and validity of the amounts claimed by Sigma.  *Id.* ¶ 123.  Guatemala did not challenge the reports or findings from the independent expert.  All amounts assessed in the arising from the breach of

8

contract Award were even based on documents issued by the administrative authorities of the Ministry, which reviewed and confirmed each amount.

23. Ultimately, the tribunal unanimously ruled in favor of Sigma and awarded damages, attorney's fees, and costs to Sigma under the Contract in the total amount of US$ 37,421,119.66 plus GTQ 40,000.00, plus post-Award interest. *See* Award ¶¶ 115–18, 127–28.

24. With respect to US$ 28,393,140.49 of the Award, the Tribunal awarded post-judgment interest at the contractually agreed rate, to begin running from January 1, 2022. *Id.* ¶ 125.[3] As to the balance of the Award, the tribunal awarded post-judgment interest at the statutory rate set forth in Article 1947 of the Guatemalan Code, to begin running from the thirty-first day after the Award became final. *Id.* ¶ 126.

25. The tribunal further found that Guatemala's "procedural conduct" in the Arbitration "cannot be deemed to have been in good faith" and therefore, based on Articles 573, 574 and 575 of the Guatemalan Code, Guatemala "cannot be declared to be exempt from paying the arbitral costs and expenses and will be therefore ordered to pay them." *Id.* ¶ 115.

26. On November 18, 2021, the tribunal corrected the Award to rectify "the transcription of the arbitration clause, where it was stated that the award will be subject to any challenge or remedy, when the correct transcription is that 'the Award WILL NOT BE SUBJECT TO ANY CHALLENGE OR REMEDY.'" Aizenstatd Decl., Ex. D at 2; *see also* Contract at 35, Section Seventeenth ("The award will not be subject to any challenge and must be complied with in good faith and without delay by the Parties.").

---

[3] The contractually agreed rate, which incorporates by reference Article 63 of the Procurement Law, is the "maximum annual interest rate established for tax purposes by the [Guatemalan] Monetary Board." Award ¶ 125.

**The Vacatur Proceedings and the Confirmation of the Award**

27. On December 12, 2021, Guatemala sought to have the Award set aside by the Appeals Court in Guatemala, by means of a vacatur proceeding known as a *recurso de revisión* (the "Vacatur Proceedings").

28. In the Vacatur Proceedings, Guatemala maintained the position it took in the Arbitration, arguing that the Arbitration should have been stayed on the ground that the Contract was "the object of an investigation and was under judicial reserve . . . which cause[d] the State of Guatemala to be [in] a defenseless condition." Confirmation Judgment at 8. According to Guatemala, "[e]ven if the State had access to those documents, they can't be made public via the arbitration process because it would constitute a leakage of information and there would be criminal responsibility." *Id.* at 9.

29. On June 13, 2022, the Appeals Court opened a ten-day evidentiary period, allowing Guatemala to submit evidence to prove its allegations. *See id.* at 5. Among the seventeen documents submitted as evidence by Guatemala was a copy of the Contract that Guatemala had previously alleged it could not access or publicize. *Id.* at 17–18. The Contract had also been consistently available for public access through the State's public procurement website, *Guatecompras.gt*; indeed, Sigma even obtained a certified copy from Guatemala's Communications Ministry for purposes of the instant Petition. The Appeals Court also obtained an electronic copy of the proceedings in the Arbitration directly from the Secretary of the Arbitral Tribunal. *See id.* at 4.

30. During the Vacatur Proceedings, and prior to the issuance of the Confirmation Judgment, Sigma, Guatemala, and a third party filed collateral constitutional attacks (*amparos*) against procedural orders issued by the Appeals Court. *See* Aizenstatd Decl. ¶¶ 16–17. An

additional *amparo* was filed against the Confirmation Judgment, but only on the basis that the Vacatur Proceedings should have been suspended pending the Appeals Court's receipt of the original Arbitration files, even though Guatemalan law does not require the submission of a complete arbitration record for an arbitral award to be reviewed by the Appeals Court. *Id.* ¶ 16. All of these *amparos* remain pending resolution by the Supreme Court. *Id.* ¶¶ 17–18.

31. On October 3, 2022, the Appeals Court issued the Confirmation Judgment. The Appeals Court first noted that the validity of the Contract had not been questioned except to the extent that Guatemala challenged the enforceability of the provision in the Contract forbidding any challenge to an arbitral award—an argument the Appeals Court found mooted by the very fact that it was hearing and determining the Vacatur Proceedings. *See* Confirmation Judgment at 21. The court then addressed and dismissed Guatemala's arguments for setting aside the Award, finding that "[Guatemala] has not provided evidence, facts, or documents, from which the judicial reserve [of the Contract] could be proven," and that even if the Contract had been under such a reserve, there were procedures the government could have undertaken to obtain it. *Id.* at 22

32. Turning to the bases for setting aside an arbitral award under Section 43 of the Arbitration Law, the Appeals Court held that "the Attorney General didn't prove any of the situations indicated by law and didn't prove any of those situations through means of proof offered by the State." *Id.* at 24. Finally, the Appeals Court "was unable to establish that the Arbitration Award violates public order, because the Attorney General didn't prove the existence of a definite judgement that declares the claimed illegality of the Contract"—in other words, the State had never once challenged the legality of the Contract, so there was certainly no judgment declaring it *illegal*. *Id.* With no basis to set aside the Award, the Appeals Court held that "the arbitration award must be confirmed." *Id.*

**LEGAL STANDARD**

**The New York Convention and the Panama Convention**

33. Confirmation of the Award is governed by the New York Convention, or, in the alternative, the Panama Convention—Guatemala and the United States are signatories to both. Section 305(1) of the FAA instructs that in U.S. courts, where "requirements for application of both the [Panama] Convention and the [New York] Convention . . . are met," the Panama Convention shall apply "[i]f a majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the [Panama] Convention and are member States of the Organization of American States." Section 305(1) of the FAA thus instructs here that, because the parties to the arbitration agreement were a Guatemalan company and the Guatemalan state, and because Guatemala has ratified the Panama Convention and is a member of the Organization of American States, the Panama Convention applies if the "requirements for [its] application" are otherwise met.

34. Nevertheless, there is some divergence in authority as to whether an award arising from an arbitration between citizens of the same state, conducted in that state, and governed by that state's laws is sufficiently "international" to be governed by the Panama Convention. *Compare, e.g.*, *Energy Transp. Ltd. v. M.V. San Sebastian*, 348 F. Supp. 2d 186, 198 (S.D.N.Y. 2004) ("[I]f parties sought enforcement in the United States of an award rendered in Panama, involving only Panamanian citizens conducting a domestic transaction, the New York Convention would likely apply but the Inter-American Convention would not because of the award's purely domestic character."); *Freaner v. Valle*, 966 F. Supp. 2d 1068, 1076 (S.D. Cal. 2013) (distinguishing the Panama Convention's application to the field of "'international' commercial arbitration" from the New York Convention's application to the arguably broader category of

'foreign arbitral awards.'"), *with Técnicas Reunidas de Talara S.A.C. v. SSK Ingeneria y Construccion S.A.C.*, 40 F.4th 1339 (11th Cir. 2022) (applying the Panama Convention to a dispute between two Peruvian parties); *Sequip Participacoes S.A. v. Marinho*, 2018 WL 10593629, at *3 (S.D. Fla. Nov. 19, 2018) (same as to dispute between two Brazilian parties).

35. The D.C. Circuit, however, has concluded that the question whether the New York or Panama Convention applies is academic when a court would be required to apply the same legal standard regardless. In *TermoRio S.A. E.S.P. v. Electranta S.P.*, the Circuit held—in a case involving an award arising from arbitration conducted in Colombia, between a Colombian company and the Colombian state—that it "need not decide the applicability of [the Panama Convention] . . . because the relevant provisions of the Panama Convention and the New York Convention are substantively identical for purposes of this case," and that it would "resolve [the] matter with reference to and using the language of the New York Convention." 487 F.3d 928, 933 (D.C. Cir. 2007); *see also Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 45 (2d Cir. 1994) ("The legislative history of the [Panama] Convention's implementing statute . . . clearly demonstrates that Congress intended the [Panama] Convention to reach the same results as those reached under the New York Convention.").

36. For the avoidance of doubt, Sigma seeks recognition of the Award under both the New York and Panama Conventions insofar as the Court may determine that one or the other applies to the exclusion of the other. Moreover, the FSIA exception to sovereign immunity for arbitral awards applies regardless which treaty governs. And, as the D.C. Circuit explained in *TermoRio*, the issues presented by this Petition do not turn on which of the two conventions applies, because the relevant provisions of each treaty are substantively identical and a U.S. court will apply the same standard to awards arising under either Convention. Under the FAA, this

Court "shall confirm" the Award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York or Panama] Convention." 9 U.S.C. § 207; *see id.* § 302 (making § 207 applicable to the enforcement of awards under the Panama Convention). As there are no grounds for refusal or deferral of recognition of the Award under the standards applicable to both Conventions, the Award should be confirmed.

### The Requirements for Confirmation Are Satisfied

37. The Award was rendered pursuant to the Parties' Contract and the CENAC Rules and "aris[es] out of a legal relationship . . . which is considered as commercial" between parties who are not all citizens of the United States, bringing the Award within the scope of the New York Convention. *See* 9 U.S.C. § 202. Alternatively or in addition, as noted *supra* ¶ 33, the Parties are all Guatemalan, bringing the Award within the scope of the Panama Convention pursuant to 9 U.S.C. § 305(1), assuming that the "requirements for application" of the Panama Convention are otherwise met.

38. The Award is binding upon the Parties and subject to recognition and enforcement under the New York and/or Panama Conventions. *See* New York Convention, Art. III; Panama Convention, Art. 4.

39. Sigma will serve Guatemala with notice of this Petition in accordance with the Inter-American Service Convention and Additional Protocol on Letters Rogatory, S. Treaty Doc. No. 98-27 (1984), and the FSIA.

40. This Petition is timely because it has been filed within three years of the date the Award was made. *See* 9 U.S.C. § 207.

**There Are No Grounds on Which to Deny Confirmation and Enforcement**

41. "Consistent with the 'emphatic federal policy in favor of arbitral dispute resolution' recognized by the Supreme Court," the FAA "affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)); *see also TermoRio*, 487 F.3d at 935 (noting that a district court "may refuse to enforce [a New York Convention] award only on the grounds explicitly set forth in Article V of the Convention"); 9 U.S.C. § 207 (a district court "*shall confirm the award* unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York or Panama] Convention" (emphasis added)). "[C]onfirmation proceedings are generally summary in nature" because "the New York Convention provides only several narrow circumstances when a court may deny confirmation of an arbitral award." *Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 20 (D.D.C. 2011).

42. The exclusive grounds for refusing or denying confirmation of the Award are those set forth in Article V of the New York Convention and Article 5 of the Panama Convention; those grounds are the same in both Conventions. Those grounds are also virtually identical to the ones for setting aside an arbitral award under Article 43 of the Guatemalan Arbitration Law. As noted, the Appeals Court in Guatemala reviewed and denied Guatemala's petition to set aside the Award under that law and confirmed the Award. *See supra* ¶¶ 31–32.

43. The Award should therefore be confirmed, recognized, and enforced pursuant to 9 U.S.C. § 207 and Article III of the New York Convention (or, in the alternative, Article 4 of the Panama Convention), and judgment should be entered in favor of Sigma and against Guatemala in

the full amount of the Award, with the interest and costs as provided therein accruing through the date of this Court's judgment.

44.     Sigma requests that the Court enter judgment in U.S. dollars and Guatemalan quetzales, the currencies specified in the Award. This Court has authority to enter judgment in a foreign currency when requested by the judgment creditor. *See Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 932 F. Supp. 2d 153, 158 (D.D.C. 2013), *aff'd*, 603 F. App'x 1, 4 (D.C. Cir. 2015); *accord Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 220 (D.C. Cir. 2018).

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that the Court enter an order:

(a)    recognizing the Award against Guatemala in the same manner as a final judgment issued by a court of one of the several states; and

(b)    entering judgment against Guatemala and in Sigma's favor in the amount of:

   a. US$ 37,421,119.66;

   b. GTQ 40,000;

   c. Post-Award interest as set forth in the Award until the date of entry of judgment; and

   d. Post-judgment interest at a rate to be determined by the Court.

DATED: New York, New York  
October 25, 2024

Respectfully submitted,

**HOLWELL SHUSTER & GOLDBERG LLP**

By:   */s/ Vincent Levy*

Vincent Levy (NY0487)  
Gregory J. Dubinsky (admission forthcoming)  
425 Lexington Avenue, 14th Floor  
New York, NY 10017  
(646) 837-5151  
vlevy@hsgllp.com  
gdubinsky@hsgllp.com

*Counsel for Petitioner Sigma Constructores, S.A.*