**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

SIGMA CONSTRUCTORES, S.A.,

          *Petitioner*,

v.

REPUBLIC OF GUATEMALA,

          *Respondent*.

Civil Action No. 1:24-cv-03055-SLS

---

**PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO DISMISS OR STAY**
**<u>PETITION TO CONFIRM FOREIGN ARBITRAL AWARD</u>**

**HOLWELL SHUSTER & GOLDBERG LLP**
Vincent Levy (NY0487)
Gregory J. Dubinsky (1031540)
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151
vlevy@hsgllp.com
gdubinsky@hsgllp.com

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................1

FACTUAL BACKGROUND ...............................................................3

    A.    The Contract and Underlying Dispute ........................................3

    B.    The Arbitration.................................................................4

    C.    The Award ......................................................................6

    D.    Guatemala's *Recurso de Revisión* and Confirmation of the Award ...........7

    E.    The *Amparos* ...................................................................9

    F.    Other Sigma Actions Against Guatemala ..................................10

    G.    The Present Action............................................................12

LEGAL STANDARDS ....................................................................12

    A.    Petition to Confirm Foreign Arbitral Award .............................12

    B.    Motion to Dismiss Under the FSIA .......................................13

    C.    Motion to Stay................................................................13

    D.    Motion to Dismiss for *Forum Non Conveniens* ..........................14

ARGUMENT .................................................................................14

I.    THE COURT HAS SUBJECT-MATTER AND PERSONAL JURISDICTION ...........................................................................14

    A.    The Court has jurisdiction under established Circuit law ..........14

    B.    Guatemala's jurisdictional objection is meritless ......................16

II.    A STAY IS UNWARRANTED ...............................................21

    A.    Guatemala's motion to stay the Petition should be denied just as in *Sigma I.* ...................................................................21

    B.    A stay is unwarranted under the FAA and relevant conventions...............22

    C.    A stay should not be granted pursuant to the Court's inherent powers. ....29

III.    DISMISSAL FOR *FORUM NON CONVENIENS* IS UNAVAILABLE .............35

    A.    *TMR Energy Ltd. v. State Property Fund of Ukraine* conclusively holds that dismissal for *forum non conveniens* is not available here..................35

    B.    A *forum non conveniens* analysis does not warrant dismissal..................37

IV.    THE COURT SHOULD REACH THE MERITS WITHOUT FURTHER MOTION BY SIGMA .........................................................39

CONCLUSION ..............................................................................40

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                     **Page(s)**

*Accord Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88 (2d Cir. 2006) ...............................................................................................................32

*Adam Joseph Resources v. CNA Metals Ltd.*,
   919 F.3d 856 (5th Cir. 2019).................................................................................. 18

*Argentine Republic v. Nat'l Grid Plc*,
   637 F.3d 365 (D.C. Cir. 2011) ...............................................................................39

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
   668 F.3d 724 (D.C. Cir. 2012) ...................................................................... *passim*

*Cargill Intern. S.A. v. M/T Pavel Dybenko*,
   991 F.2d 1012 (2d Cir. 1993).................................................................................. 21

*CC/Devas (Mauritius) Ltd. v. Antrix Corp.*,
   145 S. Ct. 1572 (2025)...........................................................................................15

*Chevron Corp. v. Ecuador*,
   795 F.3d 200 (D.C. Cir. 2015) .........................................................................15, 16

*Chevron Corp. v. Republic of Ecuador*,
   949 F. Supp. 2d 57 (D.D.C. 2013) .........................................................................13

*Colorado River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976)...............................................................................................32

*Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*,
   970 F.3d 1269 (10th Cir. 2020)...............................................................................23

*Corporacion Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex Exploracion y Produccion*,
   962 F. Supp. 2d 642 (S.D.N.Y. 2013 .....................................................................23

*Creighton Ltd. v. Gov't of State of Qatar*,
   181 F.3d 118 (D.C. Cir. 1999) ...............................................................................21

*Curtis v. Galakatos*,
   19 F.4th 41 (1st Cir. 2021).................................................................................14, 38

*G.E. Transp. S.P.A. v. Republic of Albania*,
   693 F. Supp. 2d 132 (D.D.C. 2010) ...................................................................... 25

*Gold Rsrv. Inc. v. Bolivarian Republic of Venezuela*,
   146 F. Supp. 3d 112 (D.D.C. 2015) ................................................................ *passim*

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947)...........................................................................................38, 39

*Huntington Ingalls Inc. v. Ministry of Def. of Bolivarian Republic of Venezuela*,
   2019 WL 2476629 (D.D.C. June 13, 2019) .............................................................9

*In re Air Crash over the S. Indian Ocean on March 8, 2014*,
  946 F.3d 607 (D.C. Cir. 2020) ..................................................................14, 37

*JSC DTEK Krymenergo v. Russian Fed'n*,
  1:23-cv-03330 (CJN), 2025 WL 1148347 (D.D.C. Apr. 17, 2025)........................26

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ..................................................................................13, 22

*Landstar Express Am., Inc. v. Fed. Mar. Comm'n*,
  569 F.3d 493 (D.C. Cir. 2009) ...........................................................................19

*LLC SPC Stileks v. Republic of Moldova*
  985 F.3d 871 (D.C. Cir. 2021) ................................................................... *passim*

*Matter of Extradition of Dominguez Villegas*,
  2021 WL 5118146 (W.D. Tex. Oct. 29, 2021) ......................................................9

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
  571 U.S. 161 (2014) ................................................................................. 17, 20

*Monegasque de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine*,
  158 F. Supp. 2d 377 (S.D.N.Y. 2001) ...............................................................39

*Newco Ltd. v. Gov't of Belize*,
  650 F. App'x 14 (D.C. Cir. 2016) .......................................................................32

*NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*,
  112 F.4th 1088 (D.C. Cir. 2024) .............................................................. 15, 16

*Nigeria v. Zhongshan Fucheng Inv. Co.*,
  145 S. Ct. 1352 (2025) ......................................................................................16

*Ortega Trujillo v. Conover & Co. Commc'ns*,
  221 F.3d 1262 (11th Cir. 2000) .........................................................................31

*Ottley v. Schwartzberg*,
  819 F.2d 373 (2d Cir.1987)................................................................................13

*Pietersen v. U.S. Dep't of State*,
  2024 WL 1239706 (D.D.C. Mar. 21, 2024).........................................................23

*Price v. Socialist People's Libyan Arab Jamahiriya*,
  294 F.3d 82 (D.C. Cir. 2002) ............................................................................13

*Schubarth v. Fed. Republic of Germany*,
  891 F.3d 392 (D.C. Cir. 2018) ..........................................................................13

*Shi v. New Mighty U.S. Trust*,
  918 F.3d 944 (D.C. Cir. 2018) ...................................................................37, 38

*Sigma Constructores, S.A. v. Republic of Guatemala*,
  22-CV-1674, 2025 WL 485403 (D.D.C. Feb. 13, 2025) ...................................14, 22

*Stabil LLC v. Russian Fed'n*,
  1:22-cv-00983 (TNM), 2024 WL 5093202 (D.D.C. Dec. 12, 2024)..................22, 31

*Tatneft v. Ukraine*,
  21 F.4th 829 (D.C. Cir. 2021) ...................................................................35, 36

*TermoRio S.A. E.S.P. v. Electrificadora Del Atlantico S.A. E.S.P.*,
  421 F. Supp. 2d 87 (D.D.C. 2006) ................................................................ 36

*TermoRio S.A. E.S.P. v. Electranta S.P.*,
  487 F.3d 928 (D.C. Cir. 2007) ............................................................ *passim*

*Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan*,
  590 F. Supp. 3d 262 (D.D.C. 2022) ..........................................................25, 31

*TMR Energy Ltd. v. State Property Fund of Ukraine*
  411 F.3d 296 (D.C. Cir. 2005) ............................................................ *passim*

*U.S. v. Fowlie*,
  24 F.3d 1059 (9th Cir. 1994)............................................................................9

*Verlinden B.V. v. Cent. Bank of Nigeria*,
  461 U.S. 480 (1983)........................................................................................20

*Zhongshan Fucheng Indus. Inv. Co. v. Fed. Republic of Nigeria*,
  112 F.4th 1054 (D.C. Cir. 2024) ......................................................16, 19, 20

**Statutes**

28 U.S.C. § 1330(a) ............................................................................... 14, 38

28 U.S.C. § 1330(b) .......................................................................................14

28 U.S.C. § 1605(a) ............................................................................. *passim*

28 U.S.C. § 1610(c). ............................................................................ *passim*

9 U.S.C. § 202 ......................................................................................... 18, 19

9 U.S.C. § 203 ............................................................................................... 18

9 U.S.C. § 302 ............................................................................................... 18

**Other Authorities**

3 Fed. Proc., L. Ed. § 4:183 (1999)............................................................13, 39

New York Convention, Art. V ........................................................................34

New York Convention, Art. VI........................................................................23

Restatement (Third) U.S. Law of Int'l Comm. Arb. § 4.24 PFD (2019).......................9

*Subject Matter*, Black's Law Dictionary (12th ed. 2024) ........................ 17

*Subject Matter*, Black's Law Dictionary (6th ed. 1990)............................17

**Rules**

D.D.C. Local Civil Rule 7 ......................................................................40, 41

## PRELIMINARY STATEMENT

The Republic of Guatemala ("Guatemala") breached an agreement with Sigma Constructores, S.A. ("Sigma") that included a binding agreement to arbitrate (the "Contract"). After exhausting its options to secure payment outside of the agreed-to arbitration process, including seeking mandatory mediation (in which Respondent refused to participate), Sigma arbitrated and won a unanimous award from a three-member arbitral panel in Guatemala City (the "Award"). Per the terms of the parties' agreement to arbitrate, the Award is final and unappealable. Guatemala sought to vacate the Award, but the Guatemalan court hearing Guatemala's challenge disagreed and confirmed the Award. Now, Sigma seeks to confirm and enforce the Award in the United States (the "Action" or the "Petition"), as Sigma may do under clearly established Circuit law interpreting the Foreign Sovereign Immunities Act (the "FSIA").

In response to Sigma's straightforward and routine request, Guatemala has moved to (a) dismiss the Petition for lack of subject-matter and personal jurisdiction or, alternatively, (b) stay the action under the Court's inherent power, or (c) dismiss the Petition for *forum non conveniens* (the "Motion"). Respondent's assertions are meritless—with many foreclosed by controlling decisions of the D.C. Circuit—and the Court should deny the Motion.

*First*, Guatemala's novel argument that the Court lacks jurisdiction because the FSIA's arbitration exception supposedly excludes "purely foreign" arbitral awards is baseless. The D.C. Circuit has repeatedly found jurisdiction over purely foreign awards under the arbitration exception to sovereign immunity; Guatemala's argument fails as a matter of first principles; and, to our knowledge, no court has ever accepted Guatemala's novel argument—which would turn Circuit law on its head. This Court should not chart a novel path undoing Circuit law.

*Second*, Guatemala's attempt to stay the action in lieu of dismissal fares no better. Guatemala fails to mention that a court considering another petition brought by Sigma to

recognize and enforce three arbitral awards against Guatemala recently rejected this same attempt to obtain a stay as premature. The same result should obtain here, but if the Court does reach the merits of Guatemala's stay arguments, the Court should reject them. Guatemala does not show its entitlement to a stay under the factors outlined in *LLC SPC Stileks v. Republic of Moldova*—indeed, it does not even address them—despite the Circuit holding that "a district court would abuse its discretion if it failed to consider the first and second [of those] factors." 985 F.3d 871, 880 (D.C. Cir. 2021). Waiver aside, *Stileks* counsels against a stay because it would prolong the already-significant delay that Sigma has endured. And the factors that Guatemala does address—judicial economy, compelling need, and comity—also counsel against a stay. Guatemala's primary argument is that the Petition may interfere with a vaguely described Guatemalan criminal investigation, but Guatemala concedes that it does not know whether the investigation meaningfully implicates the Award. Moreover, although Guatemala asserts Sigma may seize its assets, that would require not just recognition of the Award, but also a further judicial order permitting enforcement under 28 U.S.C. § 1610(c).

*Third*, and finally, Guatemala's hail-Mary attempt to dismiss the Petition under the doctrine of *forum non conveniens* is foreclosed by on-point Circuit precedent. *TMR Energy Ltd. v. State Property Fund of Ukraine* squarely holds that *forum non conveniens* in FSIA cases involving the confirmation and enforcement of arbitration awards is unavailable because only a U.S. court can attach U.S.-based assets. 411 F.3d 296, 304 (D.C. Cir. 2005).

The Court should deny the motion to dismiss or stay and, as explained in Section IV, the case should immediately proceed to merits briefing.

## FACTUAL BACKGROUND

A.    The Contract and Underlying Dispute

Sigma is a construction and engineering company incorporated in Guatemala that

operates solely in Guatemala.  On November 7, 2014, Guatemala and Sigma entered into the

Contract for Sigma to construct and upgrade from two lanes to four lanes about 100 kilometers

of roads in Guatemala.  (*See* Pet. ¶ 2.)  The Contract was executed by the Director of the General

Directorate of Roads "on behalf of the STATE OF GUATEMALA, by delegation bestowed by

the Minister of Communications, Infrastructure, and Housing."  (*See id.*; *see also* Second

Aizenstatd Decl. Ex. F at 2.). The Contract was financed by the Central American Bank for

Economic Integration ("CABEI") and approved by Guatemala's Congress.  (Second Aizenstatd

Decl. ¶ 10.)

The Contract included, in relevant part, a provision mandating that any disputes arising

out of the Contract be resolved first by direct negotiation, then by mediation, and finally through

binding arbitration.  (*See* Pet. ¶ 14; Second Aizenstatd Decl. Ex. F at 35.)  Specifically, Section

Seventeenth ("Disputes") of the Contract provides that if the Parties could not reach a mutual

resolution of their dispute, either directly or through the applicable conciliation process:

> the dispute will be resolved by arbitration of law, in accordance with the laws of
> the Republic of Guatemala, by an Arbitration Tribunal that will be appointed in
> accordance with the Conciliation and Arbitration Regulations of the Center for
> Arbitration and Conciliation of the Chamber of Commerce of Guatemala
> (CENAC) valid at the time of the conflict.  The arbitration will take place in
> Guatemala City, it will be handled by CENAC and the language of the arbitration
> will be Spanish.  ***The award will not be subject to any challenge and must be
> complied with in good faith and without delay by the Parties***.

(Second Aizenstatd Decl. Ex. F at 35 (emphasis added).)

For almost two years, Sigma performed its obligations under the Contract, and during

that time Guatemala paid Sigma in accordance with the Contract without ever raising an

objection about Sigma's performance. (Pet. ¶ 12.) Then, on July 16, 2016, Guatemala suddenly suspended the Contract, bizarrely citing *its own* unilateral failure to remit payment to Sigma. (*Id.*) Sixteen months later, on November 30, 2017, Guatemala unilaterally terminated the Contract, again citing *its own* failure to pay Sigma as the cause for termination. Guatemala then appointed an Acceptance and Settlement Commission (the "Commission") to accept Sigma's work to date and approve a sum to be remitted to Sigma for "liquidation" of the Contract. (*Id.*)

On June 6, 2019, the Commission issued an order stating that the amount of payment due to Sigma was US$4,602,620.04 (the "Liquidation Order"). (*Id.* ¶ 13.) This was well below the actual damages incurred by Sigma. (*Id.*) Moreover, the Liquidation Order excluded, without explanation, funds that had been reviewed and approved by responsible experts at the Ministry of Communication (the "Ministry"). (*Id.*) The Liquidation Order was ratified by the Director of the General Directorate of Roads on June 11, 2019, on behalf of the State of Guatemala. (*Id.*) On June 19, 2019, Sigma requested that the Minister amend the Liquidation Order to account for numerous errors therein, but its request was rejected. (*Id.*)

B.    The Arbitration

On September 29, 2020, after the Minister did not respond to requests for an amicable settlement and Respondent refused to participate in the mandatory mediation, Sigma filed a demand for arbitration with CENAC under the Contract. On April 28, 2021, a three-member tribunal was constituted in Guatemala City, Guatemala, under Sections 29 and 30 of the CENAC Rules (the "Tribunal"). (*Id.* ¶ 15.) Guatemala never presented any challenge to the appointed arbitrators. (Second Aizenstatd Decl. ¶ 13.)

Sigma proceeded to file its formal complaint on April 28, 2021, seeking an award:

- declaring that Guatemala failed to comply with its obligations under the Contract;

- ordering Guatemala to pay Sigma a total of at least US$32.8 million for work performed and damages and expenses attributable to Guatemala's premature repudiation; and

- ordering accrued interest on certain invoices, as well as the costs of the arbitration, including attorney's fees and expert work, as determined by the Tribunal.

*(Id.* ¶ 16.)

Guatemala was properly served, and appeared and participated in the Arbitration through counsel appointed by the Office of the Attorney General of Guatemala, including by filing seven motions challenging the Tribunal's procedural orders. (*Id.* ¶ 17.) Guatemala never submitted an answer to Sigma's complaint, never filed a motion against it, and never submitted evidence in accordance with the procedural timetable ordered by the Tribunal. (*Id.* ¶ 18.) It did not challenge any of the evidence presented by Sigma, either. (Second Aizenstadt Decl. ¶ 13.) This caused the Tribunal to personally inform the Attorney General of Guatemala twice of the arbitral process and the procedural conduct of the State's legal representative. (Pet. ¶ 19.)

Rather than answer the complaint or put on a defense, Guatemala filed motions arguing that the Arbitration should be stayed because Guatemala was supposedly "defenseless" based on a claimed inability to access the original executed copy of the Contract. (*Id.* ¶ 17.) Guatemala alleged that the executed Contract was "judicially sealed" due to an ongoing investigation commenced by the Public Prosecutor's Office four years before the arbitration in 2017, supposedly preventing Guatemala from accessing the document. (*Id.*) Respondent never argued or adduced evidence suggesting that the Contract or the arbitration was tainted by corruption or that Respondent's termination was otherwise justified. (Second Aizenstadt Decl. ¶ 13.)

Ultimately, the Tribunal determined that Guatemala's representation that the Contract was inaccessible was false, as the criminal investigation did not render the Contract

unreviewable. (Pet. ¶ 17.) Copies of the Contract were held by Guatemala at the time of the arbitration and were indeed later provided to the court considering Guatemala's proceeding to vacate the Award by Guatemala itself. (*See* Pet. ¶¶ 20, 29.) Even more damning, Sigma obtained copies of the government's files showing that counsel appointed by the Office of the Attorney General of Guatemala and representing Guatemala in the arbitration was given a copy of the Contract and all documents it requested the Ministry for its defense months before the arbitration was even filed. (Second Aizenstatd Decl. Ex B ¶¶ 62-63.) And, in any event, the Contract is publicly available on the Guatemalan Finance Ministry's website. (*Id.* ¶ 12.)

C.    The Award

On October 27, 2021, the Tribunal rendered a unanimous decision in Sigma's favor and against Guatemala (the "Award").[1] (Pet. ¶ 1; *see also* Second Aizenstatd Decl. Ex. B.) The Award explains that Guatemala breached the Contract by failing to pay Sigma for work performed under the Contract, unilaterally terminating the Contract, and failing to compensate Sigma for damages and expenses. (*Id.* ¶ 3.) The Award assessed damages, attorney's fees, costs, and expenses in favor of Sigma and against Guatemala in the amount of US$37,421,119.66 and GTQ40,000.00, plus interest as set forth in the Award. (*Id.*)

In the Award, the Tribunal unanimously dismissed Guatemala's motions "concerning the supposed defenselessness," finding that Guatemala—contrary to its assertions—"had, during the whole proceeding, access to the necessary documents in order to defend itself and to take a posture in this arbitration proceeding." (*Id.* ¶ 20.) The Tribunal also found that a stay of

---

[1] On November 18, 2021, the Tribunal corrected the Award to rectify "the transcription of the arbitration clause, where it was stated that the award will be subject to any challenge or remedy, when the correct transcription is that 'the Award WILL NOT BE SUBJECT TO ANY CHALLENGE OR REMEDY.'" (Pet. ¶ 26; *see also* Second Aizenstatd Decl. Ex. F at 35 ("The award will not be subject to any challenge and must be complied with in good faith and without delay by the Parties.").)

arbitration based on alleged pending criminal investigations was unwarranted by the Contract and Article 103 of the Public Procurement Law. (*Id.*) And the Tribunal further found that Guatemala's "procedural conduct" in the arbitration "cannot be deemed to have been in good faith" and, based on Articles 573, 574, and 575 of the Guatemalan Civil and Commercial Procedural Code, Guatemala "cannot be declared to be exempt from paying the arbitral costs and expenses." (*Id.* ¶ 25.)

To confirm the accuracy of the amounts claimed by Sigma, the Tribunal appointed an independent expert to review the damages sought from Guatemala, including for unpaid performed works, unpaid expenses, mistaken deductions, and accrued interest. (*Id.* ¶ 22) The independent expert confirmed the accuracy and validity of the amounts claimed by Sigma. (*Id.*) Guatemala did not challenge the reports or findings from the independent expert. (*Id.*)

D.    Guatemala's *Recurso de Revisión* and Confirmation of the Award

On December 12, 2021, Guatemala filed an action to vacate the Award in the Second Appeals Court in Civil and Commercial Matters in Guatemala City, Guatemala (the "Appeals Court") in a proceeding known as a *recurso de revisión* (the "Vacatur Proceedings"). (*Id.* ¶ 27.) This is the Guatemalan-law analogue to a U.S. petition to vacate. (*See* Barrios Decl. ¶ 5.)

In the Vacatur Proceedings, Guatemala maintained the position that the arbitration should have been stayed on the ground that the Contract was "the object of an investigation and was under judicial reserve … which cause[d] the State of Guatemala to be [in] a defenseless condition." (*Id.* ¶ 28.) According to Guatemala, "[e]ven if the State had access to those documents, they can't be made public via the arbitration process because it would constitute a leakage of information and there would be criminal responsibility." (*Id.*)

On June 13, 2022, the Appeals Court opened a ten-day evidentiary period, allowing Guatemala to submit evidence to prove its allegations. (*Id.* ¶ 29.) Among the seventeen

documents submitted by Guatemala was a copy of the Contract that Guatemala previously alleged it could not access or publicize. (*Id.*) The Contract had also been consistently available for public access through the State's public procurement website, guatecompras.gt; indeed, Sigma even obtained a certified copy from Guatemala's Communications Ministry during the arbitral procedure itself and for purposes of the instant Petition, (*id.*), and it remains so available today. (Second Aizenstatd Decl. ¶ 13.) The Appeals Court also obtained an electronic copy of the proceedings in the Arbitration directly from the Secretary of the Arbitral Tribunal. (Pet. ¶ 29.)

On October 3, 2022, the Appeals Court issued the Confirmation Judgment. (*Id.* ¶ 31.) The Appeals Court first noted that the validity of the Contract had not been questioned except to the extent that Guatemala challenged the enforceability of the provision in the Contract forbidding any challenge to an arbitral award—an argument the Appeals Court found mooted by the very fact that it was hearing and determining the Vacatur Proceedings. (*Id.*) The Appeals Court then addressed and rejected Guatemala's arguments for setting aside the Award, finding that "[Guatemala] has not provided evidence, facts, or documents, from which the judicial reserve [of the Contract] could be proven," and regardless, there were procedures the government could have undertaken to obtain a copy of the Contract. (*Id.*)

On the bases for setting aside an arbitral award under Guatemalan law, the Appeals Court held that "the Attorney General didn't prove any of the grounds indicated by law and didn't prove any of those grounds through means of proof offered by the State." (*Id.* ¶ 32.) Finally, the Appeals Court "was unable to establish that the Arbitration Award violates public order, because the Attorney General didn't prove the existence of a definite judgement that declares the claimed

illegality of the Contract." (*Id.*)  With no basis to set aside the Award, the Appeals Court held that "the arbitration award must be confirmed."[2] (*Id.*)

      E.    The *Amparos*

During the Vacatur Proceedings, and prior to the issuance of the Confirmation Judgment, Sigma and Guatemala filed collateral constitutional attacks, known as *amparos*, against procedural orders issued by the Appeals Court.  (*Id.* ¶ 30.)  An *amparo* is a legal action used to protect parties from violations of their constitutional rights.  (*See* Barrios Decl. ¶ 9.)  U.S. courts have recognized that "[t]he procedure most analogous to an *amparo* in the United States is a petition for a writ of habeas corpus" because "[l]ike habeas corpus, the *amparo* has a more limited scope than an appeal and determines whether the contested act violated a petitioner's constitutional rights."  *Matter of Extradition of Dominguez Villegas*, 2021 WL 5118146, at *6 (W.D. Tex. Oct. 29, 2021) (quoting *U.S. v. Fowlie*, 24 F.3d 1059, 1065 (9th Cir. 1994)).

In total, six *amparos* were filed.  (Pet. ¶ 30.)  Three remain pending.  (Second Aizenstadt Decl. ¶ 18.)  Guatemala's Motion focuses on an *amparo* seeking to overturn the Confirmation Award on the basis that the Vacatur Proceedings should have been suspended pending the Appeals Court's receipt of the original arbitration files (the "Primary *Amparo*").[3]  (Pet. ¶ 30.)

---

[2] *See* Restatement (Third) U.S. Law of Int'l Comm. Arb. §§ 4.24 PFD (2019) ("By definition, confirmation … is the reduction of an award to judgment by a court of the seat[.]"); § 4.36 PFD ("When a court confirms an award, it reduces the award to a judgment."); *Huntington Ingalls Inc. v. Ministry of Def. of Bolivarian Republic of Venezuela*, 2019 WL 2476629, at *4 (D.D.C. June 13, 2019) (citing the Restatement definition and noting that "the terms 'confirm' and 'enforce' mean essentially the same thing in the arbitration-award context, and differ only with respect to whether the arbitral award that the party seeks to have reduced to a judgment of the court was made inside the United States or abroad").

[3] Sigma's position is that this *amparo* is meritless, as Guatemalan law does not require the submission of a complete arbitration record for an arbitral award to be reviewed by the Appeals Court.  (*See* Barrios Decl. ¶ 15.)

On April 22, 2024, the Guatemalan Constitutional Court issued a provisional stay pursuant to the Primary *Amparo* temporarily suspending the Confirmation Judgment during the pendency of the Primary *Amparo*.  (Second Aizenstatd Decl. ¶ 18.)  Such stays are common, and the Supreme Court granted one concerning a separate *amparo* filed by Sigma, which sought a ruling that the Appeals Court lacked jurisdiction to consider Guatemala's set-aside requests.  (*See* Barrios Decl. ¶ 14; *see also* Second Aizenstatd Decl. ¶¶ 21-22.)

It is unclear when the Supreme Court will rule on the Primary *Amparo*.  (*See* Barrios Decl. ¶ 11.)  *Amparo* proceedings can take years to resolve, and years-old *amparos* remain pending before the Supreme Court concerning this very case.  (*Id.*; *see* Pet. ¶ 30.)  Once the Supreme Court has resolved the Primary *Amparo*, either party may appeal to the Constitutional Court.  (*See* Barrios Decl. ¶ 12.)  The Constitutional Court could similarly take years to resolve any such appeals.  (*Id.* ¶ 13.)  The Constitutional Court's decision on the Primary *Amparo* will be final and non-appealable, though two other *amparos* remain pending.  (*Id.* ¶ 12.)

Moreover, even if the Primary *Amparo* succeeds on the merits, the Award would not be immediately vacated.  (Second Aizenstatd Decl. ¶ 20.)  That is because the Primary *Amparo* asserts that the Confirmation Judgment violates Guatemala's constitutional rights because the Appeals Court issued the Confirmation Judgment without reviewing a physical copy of the arbitral record.  (*Id.*)  Therefore, if the Primary *Amparo* is successful, the Appeals Court would be required to examine a physical copy of the arbitral record before issuing a new confirmation judgment.  It is pure speculation to assume that the Primary *Amparo* would be successful and that the Appeals Court, upon reviewing a physical copy of the arbitral record, which is essentially identical to the digital one, would reverse its decision.

F.    Other Sigma Actions Against Guatemala

In addition to the Award at issue in this Action, Sigma has won six other arbitral awards

against Guatemala. *See Sigma Constructores, S.A. v. Republic of Guatemala*, 1:22-cv-01674-TSC-MAU (D.D.C. Jun. 10, 2022), ECF No. 1 at ¶ 1; (Second Aizenstatd Decl. ¶ 17). Each of those awards was based on Guatemala's breach of contracts for the construction of roads and infrastructure in Guatemala. *See* 1:22-cv-01674-TSC-MAU (D.D.C.), ECF No. 1 at ¶ 2; (Second Aizenstatd Decl. ¶ 17).

Guatemala paid all amounts due to Sigma under two of the awards, aside from interest and related attorney fees. (Second Aizenstatd Decl. ¶ 17.) The remaining five awards, including this one, remain unsatisfied. *See id.*; *see also* 1:22-cv-01674-TSC-MAU (D.D.C.), ECF No. 1 at ¶ 2. Guatemala filed petitions in Guatemala to vacate each of the five unsatisfied awards, and each of Guatemala's challenges to these awards were denied. *See* 1:22-cv-01674-TSC-MAU (D.D.C.), ECF No. 1 at ¶¶ 29, 38, 47. Guatemala also filed a series of *amparos* concerning these awards, at least two of which (regarding two of the awards) are subject to final rulings from the Constitutional Court; others remain pending. *See* 1:22-cv-01674-TSC-MAU (D.D.C. May 10, 2024), ECF No. 30 at 9-12. The Constitutional Court dismissed two of the *amparos* it considered. *Id.* A chart showing the key dates for these proceedings is below (*See* Second Aizenstatd Decl. ¶ 4):

|  | **Arbitration Filed** | **Award Issued** | **Confirmed** | ***Amparo* Status** |
|---|---|---|---|---|
| Award 1 | October 10, 2018 | September 20, 2019 | February 21, 2020 | Pending |
| Award 2 | October 4, 2019 | February 2, 2021 | July 19, 2021 | Rejected November 15, 2023 |
| Award 3 | October 2, 2019 | March 5, 2021 | June 29, 2021 | Rejected January 22, 2024 |
| Award 4 | February 14, 2018 | September 24, 2018 | January 21, 2019 | Rejected January 7, 2021 |
| Award 5 | June 23, 2022 | March 9, 2023 | June 12, 2023 | Pending |
| Award 6 | April 6, 2018 | October 4, 2018 | September 13, 2019 | Pending |

Sigma has commenced enforcement proceedings against Guatemala in Guatemala

concerning each of the six unsatisfied awards not subject to this Petition, with the first such

enforcement proceeding filed on November 9, 2020 and the most recent filed on July 12, 2024.

*Id.* at 13.  In all the enforcement proceedings, the Guatemalan courts rejected Guatemala's

opposition to the enforcement of the Awards and in all but one have ordered Guatemala to pay

Sigma the amounts owed under each award.  *Id.* at 13-14.

When Guatemala did not pay, Sigma filed a petition in this District on June 10, 2022, to

confirm three of those awards.  1:22-cv-01674-TSC-MAU (D.D.C.), ECF No. 1.  On March 27,

2024, Guatemala moved to dismiss that petition or, alternatively, to stay.  1:22-cv-01674-TSC-

MAU (D.D.C. Mar. 27, 2024), ECF No. 28.  On February 13, 2025, Magistrate Judge Moxila A.

Upadhyaya of this District issued a report recommending that the Court deny Guatemala's

motion to dismiss or stay in full.  1:22-cv-01674-TSC-MAU (D.D.C. Feb. 13, 2025), ECF

No. 44.  Guatemala has since filed objections to the report and recommendation; these remain

pending.  1:22-cv-01674-TSC-MAU (D.D.C. Mar. 13, 2025), ECF No. 48.

G.    The Present Action

On October 25, 2024, Sigma filed a petition with the Court to confirm the Award.  (ECF

No 1.)  On December 18, 2024, the Court issued amended letters rogatory (ECF No. 8) for

Sigma to effectuate service.  Service on Guatemala was carried out by the Guatemalan 12th Civil

Court of First Instance on February 10, 2025.  (*See* ECF No. 11.)  Guatemala filed the Motion to

Dismiss or Stay on June 18, 2025.  (ECF No. 15.)  Sigma now opposes in full.

## LEGAL STANDARDS

A.    Petition to Confirm Foreign Arbitral Award

The hearing on "a petition [to recognize and confirm a foreign arbitral award under the

New York Convention] will take the form of a summary procedure in the nature of federal

motion practice."  *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 940 (D.C. Cir. 2007)

(quoting 3 Fed. Proc., L. Ed. § 4:183 (1999)).  "The party resisting confirmation bears the heavy burden of establishing that one of the grounds for denying confirmation in Article V [of the New York Convention] applies."  *Chevron Corp. v. Republic of Ecuador*, 949 F. Supp. 2d 57, 64 (D.D.C. 2013); *see also Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir.1987) ("[T]he showing required to avoid summary confirmation is high.").  If none of Article V's bases for denying confirmation are met, the court "shall confirm the award[.]"  *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) (quoting 9 U.S.C. § 207).

 B. <u>Motion to Dismiss Under the FSIA</u>

 "[O]n a motion to dismiss under the FSIA where [the foreign sovereign] ha[s] not disputed any facts," courts "must assume the truth of [the petitioner's] allegations, make all reasonable inferences in [its] favor, and … place the ultimate burden of proof with [the sovereign]."  *Schubarth v. Fed. Republic of Germany*, 891 F.3d 392, 401 (D.C. Cir. 2018).  "Thus, where the [foreign sovereign] contests only the legal sufficiency of [the petitioner's] jurisdictional claims, the standard is similar to that of Rule 12(b)(6), under which dismissal is warranted if no plausible inferences can be drawn from the facts alleged that, if proven, would provide grounds for relief."  *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 93 (D.C. Cir. 2002).  The foreign state "bears the burden of proving sovereign immunity, including that the [petitioner's] allegations do not bring its case within a statutory exemption to immunity."  *Schubarth*, 891 F.3d at 398.

 C. <u>Motion to Stay</u>

 When seeking a stay under this Court's inherent authority, "[t]he burden is on the movant to make out a clear case of hardship or inequity in being required to go forward."  *Landis v. N. Am. Co.*, 299 U.S. 248, 253 (1936).  In evaluating the propriety of a stay in the context of the New York Convention, a court must consider (1) "the general objectives of arbitration," namely,

"the expeditious resolution of disputes and the avoidance of protracted and expensive litigation,"
and (2) "the status of the foreign proceedings and the estimated time for those proceedings to be
resolved." *Stileks*, 985 F.3d at 879–80. "Continued litigation is not a hardship that justifies a
stay." *Sigma Constructores, S.A. v. Republic of Guatemala*, 22-CV-1674, 2025 WL 485403, at
*8 (D.D.C. Feb. 13, 2025) ("*Sigma I*").

      D.      <u>Motion to Dismiss for *Forum Non Conveniens*</u>

      A party seeking dismissal for *forum non conveniens* bears the burden to show both
"(1) that an adequate alternative forum is available to hear the dispute, and (2) if so, that the
balance of certain public and private interest factors strongly counsels in favor of trying the
dispute in the alternative forum." *In re Air Crash over the S. Indian Ocean on March 8, 2014*,
946 F.3d 607, 612 (D.C. Cir. 2020). If there is no adequate alternative forum, then the Court
should deny the motion outright. *See TMR*, 411 F.3d at 304; *see also Curtis v. Galakatos*, 19
F.4th 41, 48 (1st Cir. 2021) ("If the defendant fails to show there's another suitable court to hear
the plaintiff's case, that's the end of the line for her *forum non conveniens* motion.").

## ARGUMENT

## I.    THE COURT HAS SUBJECT-MATTER AND PERSONAL JURISDICTION

      Guatemala seeks dismissal of the Petition on the basis that the Court purportedly "lacks
subject matter jurisdiction and personal jurisdiction" over "a purely foreign dispute." (Mot. 12-
13.) That is wrong. The FSIA grants this Court jurisdiction under established D.C. Circuit law.
And Guatemala's novel counter-argument, which no court has ever accepted, lacks any merit.

      A.      <u>The Court has jurisdiction under established Circuit law</u>

      This Court has subject-matter and personal jurisdiction over foreign states under 28
U.S.C. § 1330(a) and (b) "as to any claim for relief *in personam*," so long as there is an
applicable exception to foreign-sovereign immunity "either under sections 1605-1607" or "any

applicable international agreement." *See also CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 145 S.

Ct. 1572, 1582 (2025) ("personal jurisdiction rises and falls based on whether an immunity

exception applies and the plaintiff has effectuated proper service").

Relevant here, § 1605(a)(6) (adopted in 1988) provides an exception to immunity for

petitions brought against foreign states "to confirm an award made pursuant" to "an agreement

made by [a] foreign state with or for the benefit of a private party to submit to arbitration …

concerning a subject matter capable of settlement by arbitration under the laws of the United

States," if, *inter alia*, the "award is … governed by a treaty or other international agreement in

force for the United States calling for the recognition and enforcement of arbitral awards."

The D.C. Circuit has distilled this arbitration-immunity exception into just three

jurisdictional facts:  "[1] the existence of an arbitration agreement, [2] an arbitration award and

[3] a treaty governing the award."  *Stileks*, 985 F.3d at 877.  The D.C. Circuit has further

instructed that, upon the plaintiff "initially satisfy[ing] a burden of production as to these [three]

facts," the burden shifts to "the foreign sovereign to 'establish the absence of a factual basis by a

preponderance of the evidence.'"  *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*,

112 F.4th 1088, 1100 (D.C. Cir. 2024) (quoting *Chevron Corp. v. Ecuador*, 795 F.3d 200, 204

(D.C. Cir. 2015)).

Here, all three necessary jurisdictional facts are present, and Guatemala cannot seriously

dispute them (and indeed does not even try).  Guatemala and Sigma entered into the Contract,

which requires that disputes be resolved through arbitration.  (Pet. ¶ 2; Second Aizenstatd Decl.

Ex. F at 35.)  The Tribunal issued the Award pursuant to the arbitration clause in the Contract.

(Pet. ¶ 2; Second Aizenstatd Decl. Ex. B at 4-5.)  And, last, there is a treaty governing the

Award, namely, both the New York and Panama Conventions, each of which "allow[s] courts in

one country to enforce arbitral awards rendered in other signatory countries." *TermoRio*, 487 F.3d at 933; *see* 9 U.S.C. §§ 201–02 (New York Convention); *id.* §§ 301–02 (Panama Convention).[4]

Thus, there cannot be a serious question that the Court has jurisdiction here. Applying the FSIA's arbitration exception, the D.C. Circuit has repeatedly found jurisdiction over petitions to confirm arbitration awards between private parties and foreign states when those foreign states are, as here, parties to the New York Convention or the Panama Convention and the award is subject to one of these conventions. *See, e.g.*, *Chevron*, 795 F.3d at 202.

The Circuit has also found jurisdiction in numerous cases where the subject matter of the agreement at issue is "purely foreign," as Guatemala puts it. For example, *Stileks* concerned an arbitration brought by a Ukrainian company against a company owned by the Republic of Moldova under an agreement governing the supply of electricity to Moldova. 985 F.3d at 875-76. The D.C. Circuit held that the arbitration exception applied, even though the dispute in no way involved the United States. *Id.* at 875; *see also NextEra Energy*, 112 F.4th at 1105 (arbitration exception applies to dispute between Dutch and Luxembourgish companies and Spain over solar power projects in Spain); *Zhongshan Fucheng Indus. Inv. Co. v. Fed. Republic of Nigeria*, 112 F.4th 1054, 1060-61 (D.C. Cir. 2024) (same for dispute between Chinese company and Nigeria over construction of industrial park in Nigeria), *cert. dismissed sub nom. Nigeria v. Zhongshan Fucheng Inv. Co.*, 145 S. Ct. 1352 (2025).

B.    Guatemala's jurisdictional objection is meritless

Facing unbroken authority demonstrating this Court's jurisdiction, Guatemala advances a novel argument that, to our knowledge, no court has ever accepted—and, indeed, Guatemala

---

[4] Congress established private rights of action to seek recognition of awards subject to the New York Convention, 9 U.S.C. §§ 201, 203, and the Panama Convention, *id.* §§ 301, 303.

cites no judicial decision adopting its position.  Guatemala's argument is predicated on the FSIA's requirement that the arbitration exception applies if the dispute's "subject matter" is "capable of settlement by arbitration under the laws of the United States."  According to Guatemala, this means that the dispute has to be subject to arbitration under Chapter 1 of the FAA, and because that part of the FAA defines "commerce" as excluding "purely foreign dispute[s]," so does the FSIA's arbitration exception.  (Mot. 13.)  This argument fails as a matter of first principles (again, no court has adopted it), and this Court should not be the first to endorse it and thereby gut Circuit law governing arbitrations against sovereigns.

*First*, the arbitration exception's reference to "subject matter" is not a limitation requiring domesticity.  The statute's use of the term "subject matter" excludes certain disputes based not on geography but rather on the nature of "[t]he issue presented for consideration; the thing in which a right or duty has been asserted; the thing in dispute."  *Subject Matter*, Black's Law Dictionary (12th ed. 2024); *see also Subject Matter*, Black's Law Dictionary (6th ed. 1990) ("The subject, or matter presented for consideration; the thing in dispute; the right which one party claims as against the other, as the right to divorce; of ejectment; to recover money; to have foreclosure.").  If Congress had intended to impose a U.S.-nexus requirement, "it easily could have drafted language to that effect.  Indeed, when Congress wanted" a U.S.-nexus requirement, "it explicitly said so" in some of the other exceptions to immunity, such as the commercial-activity exception (28 U.S.C. § 1605(a)(2)) and the expropriation exception (28 U.S.C. § 1605(a)(3)).  *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014).  Instead, Congress drafted a limitation on the types of disputes that could trigger the exception's application, without speaking to the location of the conduct.

*Second*, there can be no question that the "subject matter" at issue in any case involving an award subject to the New York Convention or the Panama Convention is "capable of settlement by arbitration under the laws of the United States" within the meaning of the arbitration exception.  The United States signed both conventions, and the "laws of the United States" include statutes codifying and adopting both the New York and Panama Conventions, and specifying that "[a]n action or proceeding falling under the [New York] Convention shall be deemed to arise under the laws and treaties of the United States."  9 U.S.C. § 203; *see Adam Joseph Resources v. CNA Metals Ltd.*, 919 F.3d 856, 862 (5th Cir. 2019) ("[I]f the subject matter of the litigation has some connection, some relation, has some reference to the arbitration clauses, it relates to the arbitration for purposes of the Convention.") (quotation marks omitted).

*Third*, the New York and Panama Conventions apply to commercial disputes like the one at issue here, including foreign ones—and thus so does the FSIA exception.  "For most signatories, the New York Convention applies to all private arbitral agreements, *regardless of subject matter*," but the United States signed the New York Convention subject to "a declaration, authorized by Article I(3) of th[at] Convention, that the Convention would be applicable 'only to differences arising out of legal relationships whether contractual or not, *which are considered commercial*[.]'"  *Belize Soc. Dev.*, 794 F.3d at 103 (emphases added).  The United States "implemented the Convention in the Federal Arbitration Act," *id.*, specifying in 9 U.S.C. § 202 that it applies to awards arising "out of a legal relationship, whether contractual or not, which is considered as commercial."[5]  The United States thus excised from the New York Convention's

---

[5] Congress applied the same limitation to awards subject to the Panama Convention.  *See* 9 U.S.C. § 302 ("Sections 202, 203, 204, 205, and 207 of this title shall apply to this chapter as if specifically set forth herein, except that for the purposes of this chapter 'the Convention' shall mean the Inter-American Convention").

sweep certain disputes by "subject matter"—*i.e.*, non-commercial ones—which are also excluded by the FSIA provision Guatemala cites (which also looks to "subject matter").

Interpreting 9 U.S.C. § 202 in an FSIA case, the D.C. Circuit instructed that, "[i]n the context of international arbitration, 'commercial' refers to 'matters or relationships, whether contractual or not, that arise out of or in connection with commerce.'" *Belize Soc. Dev.*, 794 F.3d at 103. The Circuit added that, in this context, "[a] matter or relationship may be commercial even though it does not arise out of or relate to a contract, so long as it has a connection with commerce, ***whether or not that commerce has a nexus with the United States***." *Id.* at 104 (emphasis added); *see also Zhongshan Fucheng Indus. Inv.*, 112 F.4th at 1064-65 (rejecting sovereign's argument that New York Convention, and thus FSIA arbitration exception, should "artificially and extratextually [be] confine[d] [in] scope [to] Section 2 of the Federal Arbitration Act"). That comports with the Convention, which covers not just domestic awards but "also … arbitral awards *not considered as domestic awards* in the State where their recognition and enforcement are sought." New York Convention, Art. I(1) (emphases added).

The D.C. Circuit has never required that an arbitration award sought to be recognized or enforced in the United States concern *domestic* commercial activities; rather, it has consistently been enough to identify an award subject to the New York Convention (or the Panama Convention). Nexus aside, Guatemala does not contend the dispute here was anything but commercial—as plainly it is under Circuit law. And the dispute here plainly is "commercial" as the Circuit defines the term in the context of the New York Convention; the underlying arbitration pertained to a commercial contract for a private company to construct roads.

*Fourth*, Guatemala cannot elide all of this by recourse to context and purpose, or the presumption against extraterritoriality. (Mot. 14.) These cannot overcome plain text. *Landstar*

19

*Express Am., Inc. v. Fed. Mar. Comm'n*, 569 F.3d 493, 498 (D.C. Cir. 2009) (explaining that courts cannot "rewrite a statute's plain text to correspond to its supposed purposes."). Moreover, the argument fails on its own terms. Quoting *Verlinden*—a 1983 case decided before Congress even enacted the arbitration exception (in 1988)—Guatemala notes the Supreme Court's statement that the FSIA's immunity exceptions "generally require[] 'some form of substantial contact with the United States.'" Mot. 14 (quoting *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 490 (1983)). But this dictum undermines Guatemala's position; it shows that if Congress intended to impose a U.S.-nexus requirement, it knew how. Congress didn't. *See AU Optronics Corp.*, 571 U.S. at 169.

Moreover, Guatemala ignores the footnote attached to its quote from *Verlinden*, which observes that, per 28 U.S.C. § 1605(a)(1), "sovereign immunity shall [also] not apply [under the FSIA] if waived." *Verlinden*, 461 U.S. at 491 n.15. The arbitration exception is of a piece; it requires *an agreement by the sovereign* to arbitrate—*i.e.*, it requires a species of waiver. Further making the point, the arbitration exception enumerates three types of arbitration agreements triggering the exception, as well as a catch-all for when "paragraph 1 of this subsection [*i.e.*, the general exception for waivers] is otherwise applicable." 28 U.S.C. § 1605(a)(6); *cf. Zhongshan Fucheng Indus. Inv.*, 112 F.4th at 1067-68 (explaining that arbitration exception applies only "where a government *agrees* to resolve a dispute with a private party"). Foreign jurisdictions similarly hold that sovereigns waive immunity defenses by agreeing to arbitrate and entering into treaties like the New York Convention.[6]

---

[6] *Republic of India* v. *CCDM Holdings, LLC*, No. 500-09-030393-235, ¶ 84 (Court of Appeal of Québec Dec. 4, 2024) ("it is accepted in the case law of several foreign courts that a State which submits to international arbitration thereby waives its jurisdictional immunity before the courts which may be called upon to recognize and enforce the resulting award"); *Infrastructure Services Luxembourg S.À.R.L.* v. *Kingdom of Spain*, No. CA-2023-001556, ¶ 103

\*        \*        \*

In sum, the federal courts have appropriately applied the FSIA's arbitration exception to awards falling under the New York or Panama Convention. As the D.C. Circuit put it, "the New York Convention 'is exactly the sort of treaty Congress intended to include in the arbitration exception'" to immunity. *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 123–24 (D.C. Cir. 1999) (quoting *Cargill Intern. S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1018 (2d Cir. 1993)). This Court should not be the first to impose an extra-statutory nexus requirement that Congress could have chosen to, but did not, adopt. It should follow established law, find jurisdiction, and deny Guatemala's meritless motion to dismiss.

## II.    A STAY IS UNWARRANTED

Guatemala alternatively argues that the Court should stay this matter pursuant to its inherent power until resolution of the *revisión* proceedings. (Mot. 15.) This argument also fails.

### A.    Guatemala's motion to stay the Petition should be denied just as in *Sigma I*.

To begin, the Court should deny the stay request for the same reasons as the stay request in *Sigma I* was denied—namely, that the request is premature.

In *Sigma I*, as here, Guatemala argued that "a temporary stay or abatement is appropriate under this Court's inherent powers" because "Guatemalan litigation concerning the Awards is active and ongoing." *See* 1:22-cv-01674 (D.D.C. Mar. 27, 2024), ECF No. 28 at 24. Guatemala added that, "[d]epending on the outcome of the proceedings in Guatemala, the relief to which Sigma may be entitled under the Petition could be mooted or diminished." *Id.*

---

(Court of Appeal (Eng. & Wales) Oct. 22, 2024) (executing treaty amounts to "submi[ssion] to … jurisdiction" so that a sovereign state "may not oppose the registration of [arbitral] awards against them on the grounds of state immunity."); *Kingdom of Spain* v. *Infrastructure Services Luxembourg S.À.R.L.*, [2023] HCA 11, ¶ 8 (High Court of Austl. Apr. 12, 2023) ("Spain's agreement to [the ICSID Convention] amounted to a waiver of foreign State immunity from the jurisdiction of the courts of Australia to recognise and enforce").

The district court rejected Guatemala's arguments and refused to grant a stay. It noted that, at the time of Guatemala's request, "Guatemala's only 'case of hardship or inequity in being required to go forward' [wa]s continued litigation." *Sigma I*, 2025 WL 485403, at *8 (quoting *Landis*, 299 U.S. at 255).[7] "Continued litigation is not a hardship that justifies a stay." *Id.* (citing *Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971)); *see also Stabil LLC v. Russian Fed'n*, 1:22-cv-00983 (TNM), 2024 WL 5093202, at *6 (D.D.C. Dec. 12, 2024) ("[B]eing required to defend a suit, without more, does not constitute a clear case of hardship.").

A similar result should obtain here. As in *Sigma I*, Guatemala moves for a stay in this case's infancy. If the Court denied the stay and appropriately found that Guatemala is not immune from this action, the only hardship that Guatemala would face is continued litigation in opposing the Petition. Because continued litigation is not a hardship justifying a stay, the Court should deny the stay and permit briefing on the Petition. Indeed, even were judgment to be entered confirming the arbitration award, the FSIA requires both a waiting period before Sigma can move to enforce the Award against Guatemala's assets, and a further order of the Court. *See* 28 U.S.C. § 1610(c). In other words, there is no prospect of an imminent attachment of any assets belonging to Guatemala, as further judicial action would have to occur even post-recognition.

B.   <u>A stay is unwarranted under the FAA and relevant conventions</u>

If the Court elects to evaluate the merits of Guatemala's request for a stay, it should reject

---

[7] In support of its decision to reject Guatemala's request for a stay, the district court noted that "[n]o Party ha[d] moved for a decision on the merits." *Sigma I*, 2025 WL 485403, at *8. As explained in Section IV below, Sigma's petition for confirmation of a foreign arbitral award does count as "a summary procedure in the nature of federal motion practice." *TermoRio*, 487 F.3d at 940 (quoting 3 Fed. Proc., L. Ed. § 4:183 (1999)). Therefore, no further motion by Sigma is required for Sigma to secure a judgment in this Action. Once the Court finds that Guatemala is subject to the Court's jurisdiction, Guatemala must oppose the Petition.

Guatemala's request.  "When considering a stay, '[t]he burden is on the movant to make out a

clear case of hardship or inequity in being required to go forward.'"  *Pietersen v. U.S. Dep't of*

*State*, 2024 WL 1239706, at *8 (D.D.C. Mar. 21, 2024) (quoting *Landis*, 299 U.S. at 253).

As a threshold matter, no stay is appropriate under the FAA (or the New York and

Panama Conventions) because there is no application pending to set aside the Award.  Under

Chapters 2 and 3 of the FAA, the Court may enter a stay only "[i]f an application for the setting

aside or suspension of the award has been made to a competent authority."  New York

Convention, Art. VI.  While that has occurred here through Guatemala's *revisión* action before

the Appeals Court, that action was resolved in Sigma's favor with the confirmation of the

Award.  (*See supra* § D.)  The only potentially relevant action pending is Guatemala's *amparo*

asserting that Appeals Court decision deprived it of its constitutional rights.  (*See supra* § E.)

But that is not an appeal under Guatemalan law.  "An *amparo* is an extraordinary remedy that

must be based on an alleged violation of rights" protected by the constitution of certain Latin

American countries.  *Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de*

*Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1278 (10th Cir. 2020); *see also Corporacion*

*Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploracion y Produccion*,

962 F. Supp. 2d 642, 646 (S.D.N.Y. 2013) ("An *amparo* action is a judicial challenge to the

validity or constitutionality of acts of a government authority."), *aff'd*, 832 F.3d 92 (2d Cir.

2016).  As the Primary *Amparo* is not an appeal, no application for the setting aside of the Award

is now pending, so a stay cannot obtain under the FAA.

But even if the Primary *Amparo* were deemed sufficient to permit a stay under the FAA

(and Article VI of the New York Convention), a stay would still be unwarranted.  Applying

Article VI, the D.C. Circuit has explained that courts "should consider" the following six factors

in evaluating the propriety of a stay in a case (like this one) brought to recognize and enforce an award under the New York Convention:[8]

- "(1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;"

- "(2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;"

- "(3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;"

- "(4) the characteristics of the foreign proceedings including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute;"

- "(5) a balance of the possible hardships to each of the parties … ; and"

- "(6) any other circumstances that could tend to shift the balance in favor of or against adjournment."

*Stileks*, 985 F.3d at 879-80. Of these factors, the first two "receive additional heft" and "a district court would abuse its discretion if it failed to consider the first and second factors." *Id.* at

---

[8] Sigma asserts that jurisdiction may attach under either the New York Convention or the Panama Convention, and "the relevant provisions of the Panama Convention and the New York Convention are substantively identical." *TermoRio*, 487 F.3d at 933.

880.  Guatemala does not address these two factors—meaning that it has not established entitlement to a stay under *Stileks*—and those factors clearly favor Sigma.

          i.    *The expeditious resolution of disputes and avoidance of protracted and expensive litigation favors rejecting a stay.*

The first factor, the general objectives of arbitration, weighs in favor of denying Guatemala's request for a stay.  It is well-recognized that the "New York Convention … require[s] immediate satisfaction of arbitral awards."  *Gold Rsrv. Inc. v. Bolivarian Republic of Venezuela*, 146 F. Supp. 3d 112, 135 (D.D.C. 2015) (citing New York Convention, Art. III).  If enforcement of an arbitral award has been delayed, "the goal of ensuring 'expeditious resolution of disputes' counsels against a stay."  *Id.* at 135.

Guatemala cannot reasonably dispute that enforcement of the Award has been significantly delayed, primarily due to Guatemala's tactics.  Sigma filed its demand for arbitration on September 29, 2020—almost five years ago—and the dispute with Guatemala involves an agreement originally made in November 7, 2014.  (*See supra* §§ A, B.)  Guatemala's *revisión* proceeding was initiated on December 12, 2021.  (*See supra* § D.)  During that time, Guatemala has filed several *amparos* challenging various decisions of the arbitral body and lower Guatemalan courts, seeking stays of proceedings each time.  (*See supra* § E.)  These are precisely the sort of delays that counsel against a stay.  *See Gold Rsrv.*, 146 F. Supp. 3d at 135 (noting that a "six year[]" delay after the award was rendered counseled against a stay); *see also G.E. Transp. S.P.A. v. Republic of Albania*, 693 F. Supp. 2d 132, 139 (D.D.C. 2010) (holding that delay of four years after initial notice of arbitration "plainly weigh[ed] in favor of confirmation rather than an adjournment"); *Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan*, 590 F. Supp. 3d 262, 272 (D.D.C. 2022) (a stay was not warranted under the first factor in part because respondent "registered its annulment application over two years ago").

ii.   *The status of the foreign proceedings and the estimated time for those proceedings to be resolved favors rejecting a stay.*

The second factor, the status of the foreign proceedings and the estimated time for their resolution, also supports denying a stay. Guatemala's primary argument on this point is that this Action should be stayed pending the outcome of the *amparo* collaterally attacking the *revisión* order in Guatemala. (Mot. 19.) But even if that *amparo* were considered part of the set-aside itself (and it shouldn't, *see supra* § E), courts routinely hold that ongoing set-aside proceedings do not justify a stay. *See JSC DTEK Krymenergo v. Russian Fed'n*, 1:23-cv-03330 (CJN), 2025 WL 1148347, at *7 (D.D.C. Apr. 17, 2025) (there is "no compelling reason why merits briefing should not proceed even as The Hague proceedings [to set aside the award] do also"); *see also Gold Rsrv.*, 146 F. Supp. at 135 (denying a stay because "[w]hile the Paris Court of Appeal is currently considering Venezuela's petition to set aside the Award, that appeal is not likely to be resolved soon").

For example, in *LLC SPC Stileks v. Republic of Moldova*, respondent sought a stay under the second factor by noting that it was appealing the relevant award in Paris, and that there was supposedly a "'high probability' that the award will be overturned" in that proceeding. 985 F.3d at 880-81. A panel of the D.C. Circuit rejected Moldova's "*ipse dixit*" statement as unreliable "prognostication" without evidentiary support. *Id.* It also rejected Moldova's plea for deference to the Paris proceedings, noting that enforcement of the award had already incurred a four-year delay due to Moldova's collateral attack. *Id.* at 880.

Like the respondent in *Stileks*, Guatemala here argues for a stay by pointing to proceedings it initiated to collaterally attack the Award and *ipse dixit* statements about the anticipated resolution of those proceedings. Specifically, with respect to the Primary *Amparo*, Guatemala's brief notes that "[t]he Supreme Court is expected to reach a decision by the end of

2025" and that, upon an appeal, "it is expected that the Constitutional Court would reach a decision within one year thereafter."  (Mot. 11.)

But Guatemala's sole support is a declaration of a Guatemalan attorney who avers that "[b]ased on recent experience, I estimate that the Supreme Court may issue its decision on the main *Amparo* by the end of this year 2025" and that "based on recent experience, I estimate that the Constitutional Court may issue its final decision one year after approximately."  (Pineda Decl. ¶ 10.)  That is just the sort of *ipse dixit* that the D.C. Circuit rejected in *Stileks*.

Moreover, in arguing that the Court should defer to the Guatemalan *revisión* proceedings, Guatemala ignores that the arbitration agreement provides that "[t]he award will not be subject to any challenge and must be complied with in good faith and without delay by the Parties."  (*See supra* § A.)  And, if the Primary *Amparo* is successful, the Appeals Court would only be required to reconsider the Confirmation Judgment upon reviewing a physical copy of the arbitral record. (*See supra* § E.)  There is no basis to conclude that, upon reviewing a physical copy of the arbitral record, which is essentially identical to the digital one, the Appeals Court would reach a different result.

iii.    <em>The remaining factors similarly favor rejecting a stay.</em>

Although they are less critical, and the Court need not address them, *Stileks*, 985 F.3d at 880, the remaining four *Stileks* factors also support denying the stay:

- <u>The characteristics of the foreign proceedings</u>.  This factor contains four sub-parts, which on balance counsel against a stay.  *First*, the foreign proceedings were brought to collaterally attack a failed set-aside application, all of which disfavors a stay.  *Id.*  *Second*, the foreign proceedings were brought before this Action, which favors a stay.  But, as discussed above, they have been ongoing for years with no clear resolution in sight, and no reasonable prospect of them leading to the Award being set aside (even if

27

the *amparo* is successful).  *Third*, this Action was brought by Sigma, and the foreign

action was brought by Guatemala, which favors lifting the stay.  *Gold Rsrv.*, 146 F. Supp.

at 136.  *Fourth*, Guatemala's foreign proceedings were brought to hinder enforcement.

(*See supra* § II.B.)  Thus, three of the four sub-factors disfavor a stay.

- <u>Whether the award sought to be enforced will receive greater scrutiny in the foreign</u>

  <u>proceedings</u>.  Guatemala suggests that Guatemalan courts "have more flexibility than this

  Court to scrutinize the Award."  (Mot. 22.)  Sigma contests this, and asserts that the

  standard in both jurisdictions is substantially similar.  (Barrios Decl. ¶ 6 (noting the seven

  bases on which an award may be vacated under Guatemalan law); *see infra* § II.C.iv.)

  Moreover, the arbitration agreement provides that the Award is final and unappealable, so

  Guatemala's collateral attack should fail.  (*See supra* § A.)  Regardless, this factor is not

  dispositive.  For example, in *Gold Reserve*, the court refused to stay despite this factor

  being "marginally" in respondent's favor because the relevant court reviewed the award

  *de novo*.  146 F. Supp. at 136-37.

- <u>Balance of the hardships</u>.  This factor favors Sigma.  Since the Award was issued on

  October 27, 2021, Guatemala has forced Sigma to litigate for years in multiple

  Guatemalan courts.  (*See supra* § E.)  Indeed, Sigma has won the only decision on the

  merits rendered to date by a Guatemalan court, which confirmed the Award.

- <u>Any other circumstances</u>.  As discussed above, Sigma has won seven awards against

  Guatemala, four of which are subject to proceedings in this District.  (*See supra* § F.)

  Guatemala appears to be engaged in a multi-front battle to deny Sigma the benefits of

  arbitration awards it secured and have been confirmed by its own courts.  A stay would

  only further Guatemala's obstruction.

C.     A stay should not be granted pursuant to the Court's inherent powers.

Seeking to sidestep the above analysis, Guatemala says that it seeks a stay under the Court's inherent powers, and that it "is not at this time seeking a stay of proceedings under [the New York] Convention … because the Republic's position is that this Court lacks jurisdiction under the [New York] Convention."  (Mot. 18 n. 11.)  But Guatemala concedes that "the same considerations are relevant" whether the stay is sought pursuant to the New York Convention, the Panama Conventions, or the Court's inherent powers.  (Mot. 19 n. 11.)  So the motion for a stay under the Court's inherent authority fails for the reasons explained in the prior subsection, and the Court need not consider the additional factors that Guatemala raises as supposedly relevant to the Court's inherent power.  But, even if the Court were to consider those factors— compelling need, judicial economy, and international comity—they, too, disfavor a stay.

i.     *Guatemala has failed to show "pressing need" for a stay.*

To begin, no stay is permitted under this Court's inherent authority given the absence of pressing need.  Indeed, the D.C. Circuit has reversed the district court's grant of the sort of indefinite stay sought here on the basis of related litigation abroad challenging an award in the absence of a showing of "pressing need" by the moving party.  *Belize Soc. Dev.*, 668 F.3d at 731–32.  Guatemala cannot make that showing.  Any enforcement activity would have to await not only resolution of the confirmation proceeding but also entry of a further order by this Court under 28 U.S.C. § 1610(c), which prohibits attachment of assets "until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter."  And Guatemala's efforts to show a need, let alone a pressing need, fail.

*First*, Guatemala asserts that "continuing with this matter at the present time would risk a serious affront to the judicial and criminal processes of Guatemala."  (Mot. 20.)  Specifically,

Guatemala asserts that a criminal investigation concerning Sigma, which has been ongoing since 2017, counsels against a stay.  But Guatemala has established no connection between that investigation (on the one hand), and the Award or any litigation concerning it (on the other), aside from noting that the prosecutor's office commenced the investigation after "it completed an audit of the Contract" and that the Arbitration record was seized "in connection with the Sigma Criminal Investigation."  (*See* Mot. 11.)  Those assertions do not establish a connection between the investigation and the Award.  Indeed, Guatemala concedes that it cannot say whether there is such a concrete connection between the two proceedings, as "the criminal investigation [remains] confidential."  (Mot. 5.)[9]

And this is all beside the point anyway.  Indeed, Guatemala offers no explanation as to why a stay pending the *amparo* proceeding (relating to the set-aside order) is needed to support an unrelated *investigation* that was purportedly commenced eight years ago in 2017.  (*See supra* § B.)  The argument makes no sense, and appears to be nothing more than an unfounded effort to smear Sigma and distract from the issues in this case.

*Second*, Guatemala complains of the need to litigate in two forums, and asserts that having to recover assets from Sigma in the event that it prevails in Guatemalan courts "would pose a significant hardship for the Republic."  (Mot. 21.)  But that was also true in *Belize Social Development*, where the Circuit found it appropriate to reverse a stay of the sort sought here.  *See* 668 F.3d at 733.  And, this argument is very much premature, because, as noted, the attachment

---

[9] It bears noting that Guatemala has not raised the criminal investigation to support the vacatur of any other arbitral award that Sigma has won against it.  (*See* Second Aizenstatd Decl. ¶ 16.)  Guatemala also did not mention the investigation when it unsuccessfully sought a stay in *Sigma I*.  *See generally* 1:22-cv-01674-TSC-MAU (D.D.C. May 10, 2024), ECF No. 30.  It is unclear why Guatemala thinks the investigation bears on this stay motion but no other award that Sigma obtained against Guatemala.

of Guatemalan assets cannot occur until the Court issues an order specifically allowing it under

28 U.S.C. § 1610(c).

ii.    *It would not be economical to stay the Petition.*

While Guatemala asserts that it would be more economical to permit the Guatemalan

proceedings to conclude the review of the Primary *Amparo*, "judicial economy also favors swift

adjudication." *Tethyan Copper Co.*, 590 F. Supp. 3d at 270.  Indeed, the "New York Convention

… require[s] immediate satisfaction of arbitral awards." *Gold Rsrv*, 146 F. Supp. 3d at 135; *see*

*Stabil LLC*, 2024 WL 5093202, at *6 ("for judicial efficiency, the Court is mindful that

confirmation petitions are meant to be summary proceedings, not multi-year slugfests").

For example, in *Belize Social Development*—as discussed above—the D.C. Circuit

considered a stay granted by a district court for the pendency of a related action before the Belize

Supreme Court.  668 F.3d at 731-32.  The court held that the stay had "the legal effect of

preventing [petitioner] from proceeding with [its] claims in federal court for an indefinite period

of time, potentially for years." *Id.* at 732.  It therefore directed the district court to lift its stay.

*Id.* at 733; *see also Ortega Trujillo v. Conover & Co. Commc'ns*, 221 F.3d 1262 (11th Cir. 2000)

(vacating a stay that lasted until "the Bahamanian Courts conclude[d] their review" of related

litigation because it was indefinite).[10]

Guatemala's requested stay would be no different.  Here, Guatemala seeks "a stay of

proceedings until the Guatemalan courts reach a final determination on whether to revoke the

---

[10] Nor does it matter that Respondent purportedly "would be happy to provide the Court with updates on the status of proceedings in Guatemala." (Mot. 25.)  In *Trujillo*, "the district court directed the parties to submit status reports—reporting on the progress of the Bahamian case—every three months." 221 F.3d at 1264.  Nonetheless, the Eleventh Circuit held that a stay until "the Bahamanian Courts conclude[d] their review" of related litigation was immoderate because it was effectively indefinite in scope.  *Id.*  The D.C. Circuit relied on this decision in reaching a similar determination in *Belize Social Development*.  *See* 668 F.3d at 732.

Award." (Mot. 15); *see also Belize Soc. Dev.*, 668 F.3d at 732 (noting that the stay there was effectively indefinite because it lasted until final appellate "review of the related litigation"). Guatemala's sole response is the *ipse dixit* assertion that all appellate review will be concluded by 2026, which, as discussed above, is unsupported and contested by Sigma. (*See supra* § II.B.ii.) But the point remains that the stay being sought is indefinite—and thus improper.

### iii.  *Sigma would be prejudiced by a stay.*

Guatemala asserts that any interest Sigma has in the expeditious resolution of this Action "is decidedly outweighed by the other competing interests." (Mot. 23.) Not so. As explained above, despite Guatemala and Sigma previously agreeing that the Award would be final and unappealable, Guatemala launched numerous collateral attacks when it received an arbitral decision and court confirmation it did not like, including several *amparos*. (*See supra* § E.) Indeed, the Appeals Court issued a decision in Sigma's favor and confirmed the Award in October 2022—nearly three years ago. (*See supra* § D.) While Guatemala contends that its appeal of that decision will be exhausted by year's end, it offers no evidence in support. (*See supra* § II.B.ii.) Issuing a stay, which in practice would be indefinite, will only worsen Sigma's prejudice.

### iv.  *Comity does not favor a stay.*

Finally, Guatemala asserts that international comity favors a stay. This again fails on its own terms—nevermind that the *Stileks* analysis should be controlling, and that no stay is appropriate under the Court's inherent authority in light of *Belize Social Development*. *Accord Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006) ("The mere existence of parallel foreign proceedings does not negate the district courts' 'virtually unflagging obligation … to exercise the jurisdiction given them.'" (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)); *Newco Ltd. v. Gov't*

*of Belize*, 650 F. App'x 14, 16 (D.C. Cir. 2016) ("Any public policy interest in 'international comity,' therefore, does not here override 'the emphatic federal policy in favor of arbitral dispute resolution.'" (quoting *Belize Soc. Dev.*, 668 F.3d at 727)).

*First*, Guatemala asserts that the mere existence of the *revisión* proceeding requires a stay.  (Mot. 21.)  Here not only has that proceeding concluded with the Confirmation Judgment, but numerous courts have denied stays despite pending set-aside actions related to set-aside proceedings.  (*See supra* § II.B.ii.)  In fact, all enforcement proceedings of the awards before Guatemalan courts have proceeded without any stays even though at least one or more *amparos* presented by Guatemala was pending.  (*See supra* § F.)  And, as explained in *Stileks*, if the foreign proceedings are brought by the respondent "to set the award aside[,]" that fact "weigh[s] in favor of ***enforcement***," not in favor of a stay.  985 F.3d at 880.  That is the situation here.

*Second*, Guatemala argues that the Court should defer to Guatemalan courts because they "have more flexibility than this Court to scrutinize the Award."  (Mot. 22.)  Sigma disputes this.  Indeed, the bases for vacatur under Guatemalan law and the bases to avoid enforcement of an award under Article V of the New York Convention almost exactly track one another:

| Guatemalan Law (Barrios Decl. ¶ 6.) | New York Convention Article V |
|---|---|
| "(i) incapacity of the parties, (ii) invalidity of the arbitration agreement[.]" | V.1.(a): "The parties to the agreement [were] under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it[.]" |
| "(iii) lack of proper notice of the appointment of an arbitrator[.]" | V.1.(b): "The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case[.]" |
| "(iv) the award deals with a dispute not contemplated by or not falling within the terms of the submission to arbitration, or contains decisions on matters beyond the scope of the submission to arbitration[.]" | V.1.(c): "The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration[.]" |

| "(v) the composition of the arbitral tribunal or the arbitral procedure was not in accordance with the agreement of the parties[.]" | V.1.(d): "The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place[.]" |
|---|---|
| N/A | V.1.(e): "The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made[.]" |
| "(vi) the subject-matter of the dispute is not capable of settlement by arbitration under Guatemalan law, … [or] (vii) the award is in conflict with the public policy of Guatemala."" | V.2.(a) and (b): "The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or … The recognition or enforcement of the award would be contrary to the public policy of that country." |

Of the bases for vacatur under Guatemalan law, the only one that Guatemala specifically asserts is broader than the bases in Article V is (vii), which permits vacatur where the award is "contrary to the public policy of the State of Guatemala." (Mot. 22.) But the New York Convention contemplates vacatur in the same circumstance if a competent authority reaches that conclusion. See New York Convention, Art. V. And, so far, the only decision of a competent authority has *confirmed* the Award. (*See supra* § D.)

Third, Guatemala argues that "because the Constitutional Court has temporarily suspended the Confirmation Judgment, Sigma has no basis to enforce the Award in Guatemala." (Mot. 22.) But whether the Award is enforceable in Guatemala is irrelevant, as Sigma is currently seeking recognition of the Award and any effort to enforce the Award is still subject to a further order of this Court after a reasonable period of time following its recognition. *See* 28 U.S.C. § 1610(c). In short, the propriety of enforcing the Award need not be addressed now.

Fourth, Guatemala again notes the existence of a criminal investigation to argue that the Court should defer to the Guatemalan courts by staying this Action. As explained above,

Guatemala's innuendo and supposition should be ignored.  (*See supra* § II.C.i)

### III.    DISMISSAL FOR *FORUM NON CONVENIENS* IS UNAVAILABLE

A.    <u>*TMR Energy Ltd. v. State Property Fund of Ukraine* conclusively holds that dismissal for *forum non conveniens* is not available here</u>

Guatemala next seeks dismissal under the doctrine of *forum non conveniens*.  As Guatemala concedes, however, "the D.C. Circuit has stated that dismissal for *forum non conveniens* is not available in the arbitration confirmation context based on the presence of attachable assets."  (Mot. 27 (quoting *TMR*, 411 F.3d at 304.)  Indeed, in *TMR*, the D.C. Circuit considered whether a district court erred in refusing to dismiss a petition to confirm an award for *forum non conveniens*.  411 F.3d at 304.  The panel held that there was no error, and indeed that *forum non conveniens* was unavailable as a matter of law, because "only a court of the United States (or of one of them) may attach the commercial property of a foreign nation located in the United States."  *Id.*  And while the respondent there argued that it had no U.S.-based assets to attach, the D.C. Circuit rejected that argument, as "the possibility that the judgment of the district court may go unenforced does not bear upon whether that court is an inconvenient forum in which to defend."  *Id.*  Because only a U.S. district court can attach assets in the United States, no other adequate forum was available, and dismissal for *forum non conveniens* was foreclosed.

That ruling is controlling.  Sigma seeks to confirm the Award in the United States, so that Sigma can attach Guatemala's assets, if any, in the United States.  Accordingly, this is the only adequate forum for the Petition, regardless of whether Guatemala currently has U.S. assets. *TMR*, 411 F.3d at 304; *see also Tatneft v. Ukraine*, 21 F.4th 829, 840 (D.C. Cir. 2021) ("*forum non conveniens* is not available in proceedings to confirm a foreign arbitral award").

Guatemala's attempt to distinguish *TMR* should be rejected.  *First*, Guatemala argues that dismissal is appropriate, notwithstanding *TMR*, because "the Petition here does not specifically

seek relief as to any potential assets of the Republic in the United States." (Mot. 27.) In other words, Guatemala advocates for a rule that a petitioner must specifically seek relief as to U.S.-based assets to avail of *TMR*. That argument is illogical, but more importantly, as just noted, it is foreclosed by *TMR*, where the D.C. Circuit explained that its holding did not turn on whether the respondent had any assets in the U.S. 411 F.3d at 304; *see also Tatneft*, 21 F.4th at 840 (*forum non conveniens* unavailable "even if the defendant 'currently has no attachable property in the United States, as it may own property here in the future'" (cleaned up)).

*Second*, Guatemala argues that *TMR* is distinguishable because, unlike this Petition, it does not concern "an arbitration award that is purely domestic to a single foreign state." (Mot. 28.) But the *TMR* rule did not turn on the nature of the dispute or the arbitration—and, as noted above, Guatemala's jurisdictional argument under the FSIA fails.

*Finally*, Guatemala cites *TermoRio S.A. E.S.P. v. Electrificadora Del Atlantico S.A. E.S.P.*, a district-court decision that granted dismissal on *forum non conveniens* soon after *TMR* was decided. 421 F. Supp. 2d 87, 103 (D.D.C. 2006). It appears the district court was unaware of the ruling in *TMR*: The motion in *TermoRio* was submitted before *TMR* was decided, and *TermoRio* does not discuss *TMR* at all.[11] Moreover, when *TermoRio* came up on appeal, the D.C. Circuit affirmed on an alternate ground without considering the district court's *forum non conveniens* holding. *TermoRio*, 487 F.3d at 932 ("[W]e find it unnecessary to determine whether the case might have been dismissed on the ground of forum non conveniens, the alternative basis announced by the District Court."). As another court put it in declining to follow *TermoRio*,

---

[11] The motion to dismiss in *TermoRio* was filed in June 2004, and the reply in October 2004—*i.e.*, before *TMR*—with the defendants asserting that "the Second Circuit expressly rejected the plaintiff's contention—identical to the argument raised by Plaintiffs in this case—that the arbitration exception of the FSIA barred the Court from considering the *forum non conveniens* analysis. *See* 1:03-cv-2587, ECF No. 32 at 11. *TMR* later foreclosed this argument.

"*TMR Energy* is binding … unlike an 'in the alternative' decision rendered by another judge of this court that was not affirmed (or even considered) on appeal." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 5 F. Supp. 3d 25, 34 (D.D.C. 2013), *aff'd,* 794 F.3d 99 (D.C. Cir. 2015) (cleaned up).

B.    A *forum non conveniens* analysis does not warrant dismissal

Guatemala's arguments appear designed to preserve issues for further review in light of a claimed split with the law in the Second Circuit. As *TMR* is binding, the Court has no need or occasion to consider whether this forum is inconvenient. Should *TMR* be revisited on appeal, however, then Sigma asserts that dismissal for *forum non conveniens* would be unwarranted.

**Sigma's choice of forum is owed substantial weight**. Guatemala asserts that "because Sigma is a foreign plaintiff with no connection to the United States, its choice of forum deserves little deference" and accuses Sigma of "forum shopping." (Mot. 28.) This position is meritless, and Guatemala's accusation is puzzling. While Guatemala cites *In re Air Crash over the S. Indian Ocean on Mar. 8, 2014*, for the proposition that Sigma's choice of forum deserves "little deference," that case does not say that. *See* 946 F.3d at 613. Instead, *Air Crash* explains that there "is a ***strong*** presumption in favor of a plaintiff's chosen forum" and that "a foreign plaintiff with minimal or no connections to the United States is entitled to ***less*** deference[,]" not little deference. *Id.* (emphasis added). Moreover, as explained in *TMR*, the only way for Sigma to attach Guatemala's assets in the United States is to bring a proceeding to confirm the Award in the United States. 411 F.3d at 304; *see also Shi v. New Mighty U.S. Trust*, 918 F.3d 944, 950 (D.C. Cir. 2018) (deferring to foreign plaintiff's choice where jurisdictional reasons explain the choice of forum). Guatemala's accusation that Sigma is engaged in forum shopping is therefore baseless. Because this is the only forum where Sigma can attach Guatemala's U.S.-based assets, its choice of forum should be owed substantial weight.

**Guatemala is not an adequate forum**.  As explained above and in *TMR*, only a U.S. court can attach Guatemala's U.S.-based assets.  Therefore, Guatemala cannot be an adequate forum.  Guatemala's arguments to the contrary are unavailing.  And without an adequate alternative forum, there is no need to consider any other factor in the analysis.  *See Curtis*, 19 F.4th at 48 ("If the defendant fails to show there's another suitable court to hear the plaintiff's case, that's the end of the line for her *forum non conveniens* motion.").

**The public and private interest factors do not favor dismissal**.  Guatemala gives the public and private interest factors short shrift, dedicating just two paragraphs to them and addressing only a few of the factors, despite Guatemala carrying a heavy burden to adduce evidence showing that these factors strongly weigh in its favor.  *See Shi*, 918 F.3d at 950-51.  Contrary to Guatemala's contentions, the private and public factors do not support dismissal on *forum non conveniens*.  Sigma briefly addresses each below.

- <u>Public-Interest Factors</u>.  The public-interest factors to be weighed by the Court include: (a) administrative difficulties relating to court congestion; (b) imposing jury duty on citizens of the forum; (c) having local disputes settled locally; and (d) avoiding problems associated with the application of foreign law.  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947).  Dockets in this District are less crowded than those in Guatemala, so the first factor counsels against dismissal.  (Barrios Decl. ¶ 16.)  There is no risk of jury duty given that this is a summary confirmation proceeding (and the FSIA does not provide jury rights, see 28 U.S.C. § 1330(a)), so the second factor is irrelevant.  Contrary to Guatemala's contentions, this is a local dispute, as it concerns the potential attachment of property in the United States.  Accordingly, the third factor favors Sigma.  Finally, the fourth factor favors Sigma because this action is brought under the New York and

Panama Conventions, and the D.C. district courts have significant experience resolving disputes under these conventions and the law governing attachment of U.S. property.

- Private-Interest Factors.  The private-interest factors include (a) the ease of access to evidence; (b) the availability of compulsory process; (c) the cost for cooperative witnesses to attend trial; (d) the enforceability of a judgment; and (e) all other practical matters that might shorten any trial or make it less expensive.  *Gilbert*, 330 U.S. at 508. These factors do not weigh in favor of dismissal, as "[c]onfirmation proceedings under the Convention are summary in nature, and the court must grant the confirmation unless it finds that the arbitration suffers from one of the defects listed in the Convention." *Argentine Republic v. Nat'l Grid Plc*, 637 F.3d 365, 369 (D.C. Cir. 2011).  Accordingly, if the Court reaches them, these factors do not favor dismissal as they do not lead to the conclusion that proceeding here will be vexatious to Guatemala.  *See Monegasque de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine*, 158 F. Supp. 2d 377, 386 (S.D.N.Y. 2001), *aff'd sub nom. In re Arb. between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488 (2d Cir. 2002).

## IV.    THE COURT SHOULD REACH THE MERITS WITHOUT FURTHER MOTION BY SIGMA

For the foregoing reasons, Sigma respectfully submits that the Court has jurisdiction, and that there is no basis for a stay or dismissal for *forum non conveniens*.  As a result, Guatemala should be required to oppose Sigma's Petition without further motion by Sigma.

As explained by the D.C. Circuit in *TermoRio*, when "an arbitration award under the [New York] Convention [is] enforced by filing a petition or application for an order confirming the award supported by an affidavit[, t]he hearing on such a petition or application will take the

form of a summary procedure in the nature of federal motion practice." 487 F.3d at 940 (quoting 3 Fed. Proc., L. Ed. § 4:183 (1999)).

The standard procedure for motion practice should therefore apply to the Petition. Sigma filed its petition along with an affidavit and a proposed order. *See* D.D.C. Local Civil Rule 7(c) ("Each motion and opposition shall be accompanied by a proposed order."). Once Guatemala's jurisdictional challenge is resolved and the case moves forward, Guatemala will have the opportunity to oppose the Petition. *See* D.D.C. Local Civil Rule 7(b) ("Within 14 days of the date of service or at such other time as the Court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion."). Then, Sigma will have the opportunity to file a reply brief in further support of the Petition. *See* D.D.C. Local Civil Rule 7(d) ("Within seven days after service of the memorandum in opposition the moving party may serve and file a reply memorandum."). No further action by Sigma is therefore required for the Petition to proceed to the merits.[12]

## CONCLUSION

Guatemala's grounds for dismissal and, alternatively, a stay are without merit. Petitioner respectfully requests that this Court deny Guatemala's Motion.

Pursuant to Local Civil Rule 7(f), Petitioner requests an oral hearing on the Motion.

Dated:  August 1, 2025

---

[12] Sigma proposes that, if the Court agrees with Sigma's position and the Petition moves forward, the Court direct the parties to meet and confer to set a briefing schedule for Guatemala's opposition to the Petition and Sigma's reply in further support of the Petition.

Respectfully submitted,

/s/ *Gregory J. Dubinsky*
Vincent Levy (NY0487)
Gregory J. Dubinsky (1031540)
**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151
vlevy@hsgllp.com
gdubinsky@hsgllp.com